IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PARCILLA G. SALLEY,

Plaintiff,

v. Case No. 3:20-cv-00939

SCHOOL BOARD OF AMELIA COUNTY, VIRGINIA, JACK MCKINLEY AND DAVID SMITH,

Defendants.

**JOINT BRIEF IN SUPPORT OF MOTION TO DISMISS[1]**

## I. INTRODUCTION

Parcilla Salley ("Salley"), former Principal of Amelia County High School ("ACHS"), resigned her employment with the School Board of Amelia County ("School Board") in May of 2019 to take a position with another school district. She resigned almost a year after former Superintendent Jack McKinley's ("McKinley") employment with the School Board ended and two months after former Interim Superintendent David Smith's ("Smith") employment with the School Board ended. Nevertheless, Salley has filed a lawsuit against the School Board, McKinley and Smith for wrongful termination, harassment, and retaliation in violation of 42 U.S.C. § 1981, along with state law claims of tortious interference with contract and common

[1] The School Board and McKinley filed a Demurrer in state court before this case was removed to this Court. The state court Demurrers are the functional equivalent of a Motion to Dismiss, and under Rule 81(c)(2), repleading is not necessary. *See Perry v. Safeco*, No. 3:16-cv-323, 2017 WL 655172, at *1 n.2 (E.D. Va. Feb. 16. 2017) (quoting *Morgan v. Wal-Mart Stores E., LP*, No. 3:10c-v-669, 2010 WL 4394096, at *2 (E.D. Va. Nov. 1, 2010)) ("Accordingly, 'after removal, the demurrer filed in state court will be treated as the federal equivalent—a motion to dismiss for failure to state a claim."); *McCray v. Ardelle Assocs. Inc.*, No. 4:14cv158, 2015 WL 3886318, at *3 (E.D. Va. June 23, 2015) ("The obvious implication of this language [Rule 81(c)(2)] is that a party need not refile pending state motions in the federal court.").

law conspiracy. Salley's five-count Complaint is without merit. Salley does not state a claim against any of the three Defendants and the Complaint should be dismissed with prejudice.

First and foremost, Salley did not suffer an adverse employment action. She was not terminated nor was she constructively discharged. She voluntarily resigned. That is fatal to her claims in Counts I, III, IV and V.

Second, Salley has not alleged facts to support her assertion that the treatment she allegedly suffered was because of her race. She has not identified a single similarly-situated comparator in the Amended Complaint. Instead, she offers only the conclusory allegation that she believes was treated differently because of her race. Thus, Counts I and II cannot survive.

Third, Salley has not alleged facts to suggest that she suffered severe and pervasive harassment because of her race that altered the terms and conditions of her employment. Instead, she has outlined only disagreements and disputes with her previous supervisors. This is fatal to her claim in Count II.

Fourth, Salley did not engage in protected activity. She has not identified any communication that would amount to protected activity, as she did not complain of race discrimination or harassment. Therefore, she cannot support a retaliation claim in Count III. Moreover, the claims against the School Board should be dismissed because Salley does not allege a policy, custom, or practice that would give rise to liability pursuant to 42 U.S.C. § 1983.

With respect to the state law claims against McKinley and Smith, Salley has not alleged facts to establish the required elements of either tortious interference with contract or common law conspiracy. Moreover, a party or its agents cannot intentionally interfere with its own contract and the conspiracy claim is barred by the doctrine of intracorporate immunity.

Additionally, the School Board is entitled to sovereign immunity from Salley's state law claims. Accordingly, Counts IV and V should be dismissed.

## II. <u>ALLEGATIONS</u>

Salley was the Principal at ACHS. (ECF Doc. 1-1, at ¶ 1.) McKinley was Superintendent of ACPS until July 10, 2018. (*Id.* at ¶¶ 3, 15.) Smith assumed the role of Interim Superintendent after McKinley's termination, and served in that capacity until March 2019. (*Id.* at ¶¶ 4, 25.)

Salley alleges that from 2015 to 2018, she and McKinley had differences of opinion and that she took issue with the manner in which he spoke to her and how he conducted himself in her presence. (*Id.* at ¶ 8.) In May 2018, Salley applied for the position of Director of Instruction/Human Resources. (*Id.* at ¶ 10.) On May 22, 2018, McKinley issued a letter of reprimand for an incident that occurred on or about April 25, 2018, concerning a mandatory report to child protective services. (*Id.* at ¶ 11.) Salley filed a complaint with the School Board on May 23, 2018, regarding the letter of reprimand and wrote a rebuttal to the reprimand on May 25, 2018. (*Id.* at ¶¶ 12-13.) Salley indicated that she believed the letter of reprimand was a response to her application for position of Director of Instruction/Human Resources. (*Id.* at ¶ 13.) In June 2018, Salley interviewed for the position. (*Id.* at ¶ 14.) Salley alleges that McKinley added his friend, Cynthia Reasoner ("Reasoner"), to the interview list for a second interview and that Reasoner was advised as to what to expect in the interview, while Salley was not. (*Id.*) McKinley selected Reasoner for the position and Salley alleges that he made that decision before her June 14, 2018 interview. (*Id.* at ¶ 14.) McKinley's employment ended with the School Board on July 10, 2018. (*Id.* at ¶ 15.)

Salley served as Acting Superintendent after McKinley's departure until Smith took over as Interim Superintendent. (*Id.* at ¶ 16.) Salley alleges several disagreements that she and Smith

had in September 2018 regarding the operation of ACHS and personnel issues. (*Id.* at ¶ 18.) On October 5, 2018, Salley emailed the School Board to request a formal meeting to discuss Smith's actions. (*Id.* at ¶ 19.)

On February 14, 2019, Salley advised Reasoner that she wanted to file a formal grievance against Smith regarding his omission of accomplishments at ACHS during presentations to the School Board, as well as his accusation that Salley had falsified an absence. (*Id.* at ¶ 20.) On February 15, 2019, Salley emailed Smith regarding potential legal action against a student who recorded a meeting and Smith responded via email on February 22, 2019. (*Id.* at ¶ 22.) Salley alleges that Smith falsely accused her of lying in that email. (*Id.*) On March 6, 2019, Salley challenged the School Board's decision to place Smith's February 22, 2019 email in her personnel file. (*Id.* at ¶ 24.) In March 2019, Smith's position as Interim Superintendent ended. (*Id.* at ¶ 25.)

In May 2019, Salley accepted a position in another school district and resigned her employment with the School Board. (*Id.* at ¶ 26.)

## III. <u>ARGUMENT</u>

### A. <u>Standard of Review.</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a court to dismiss an action if the Complaint fails to state a claim upon which relief can be granted. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In reviewing a defendant's motion under Rule 12(b)(6), a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Legal conclusions, however, enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As the court pointed out in *Iqbal*, "[t]o survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (emphasis added) (internal quotations omitted).

A court should grant a motion to dismiss, however, where the allegations are nothing more than legal conclusions, or where the allegations permit a court to infer no more than a possibility of misconduct. *See Iqbal*, 556 U.S. at 678–79. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *See id.* at 678.

To state a plausible claim for relief, the Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To discount such unadorned conclusory allegations "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This approach recognizes that "'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

**B. <u>Salley does not state a claim for discrimination in violation of § 1981.</u>**

Salley alleges that Defendants violated 42 U.S.C. § 1981 by "forc[ing Salley] to leave the ACPS because of her race," harassing her on the basis of her race, and retaliating against her for complaining about McKinley and Smith's conduct. (ECF Doc. 1-1, at ¶¶ 33, 37, 45.)

Section 1981 grants all persons within the jurisdiction of the United States "the same right . . . to make and enforce contracts . . . as is enjoyed by white persons." *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018-19 (4th Cir. 1999). Section 1983 is the "exclusive federal

remedy for a violation of the rights guaranteed in § 1981." *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). Section 1981 does not confer a private right of action; persons alleging violation of the rights guaranteed by § 1981 must pursue a remedy under §1983. *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 702 (1989).

The elements of a *prima facie* case under § 1981 mirror the elements required to establish a *prima facie* case under Title VII. *Ford v. GE Lighting, LLC*, 121 F. App'x 1, 5 (4th Cir. 2005). Unlike Title VII, however, § 1981 requires a plaintiff must "prove that, **but for race, [she] would not have suffered the loss of a legally protected right**." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (emphasis added).

Absent direct or indirect evidence of discrimination, a plaintiff may establish a *prima facie* case of discrimination by showing that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was performing at the level that met her employer's legitimate expectations; and (4) she was treated differently than similarly-situated employees outside the protected class or her position was filled by a similarly qualified applicant outside of the protected class. *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 219 (4th Cir. 2016); *Brockman* v. *Snow*, 217 F. App'x 201, 206 (4th Cir. 2007); *Hill* v. *Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir. 2004); *Sadeghi v. Inova Health Sys.*, 251 F. Supp. 3d 978, 991 (E.D. Va. 2017).

**1. <u>Salley was not wrongfully terminated.</u>**

In Count I, Salley asserts a claim for "Wrongful Termination", despite the fact that she was not terminated. (*See* ECF Doc. 1-1, ¶ 26.) Presumably, Salley is making a claim of

constructive discharge.[2] (*See id.* at ¶ 33.) However, Salley has not, and cannot, state such a claim.

"To establish constructive discharge, an employee must meet a high standard. [Sh]e must allege facts demonstrating that [s]he resigned and 'that [s]he was discriminated against by [her] employer to the point where a reasonable person in [her] position would have felt compelled to resign.'" *Ofoche v. Apogee Medical Group, Virginia, P.C.*, 815 F. App'x 690, 692 (4th Cir. 2020) (quoting *Green v. Brennan*, 136 S. Ct. 1769, 1777 (2016)). "Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994) (citing *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360-61 (2d Cir. 1993)). Additionally, a pattern of discipline does not amount to an objectively intolerable working environment. *Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004); *Taylor v. Patuxent Inst.*, No. CIV A CCB-09-1111, 2009 WL 4349092, at *5 (D. Md. Nov. 30, 2009). An employee

[2] Even if Salley's claim under Count I was premised on the "pretextual letters" and "email reprimand", (ECF Doc. 1-1, at ¶ 32), she still does not allege facts to support the allegation that she suffered an adverse employment action. *See Thompson v. Potomac Electric Power Co.*, 312 F.3d 645, 651 (4th Cir. 2002) (holding that disciplinary actions that did not result in the loss of any pay or change in the plaintiff's position did not affect the terms, conditions, or benefits of his employment). "Courts within the Fourth Circuit have generally found that actions which essentially amount to criticism of an employee such as negative performance evaluations, reprimands and warnings, and counseling are alone insufficient to constitute materially adverse employment actions." *Christy v. City of Myrtle Beach*, No. 4:09-cv-1428, 2011 WL 4808193, at * 21 (D.S.C. July 27, 2011) (citing *Parsons v. Wynne*, 221 F. App'x 197 (4th Cir. 2007); *Rease v. Zax, Inc.*, C/A No. 3:07cv3601, 2009 WL 2998977, at *7 (D.S.C. Sept. 17, 2009); *Washington v. Norton*, No. 3:04cv104, 2007 WL 1417290, at *4 (N.D. W. Va. May 11, 2007); *Gordon v. Gutierrez*, No. 1:06cv861, 2007 WL 30324, at *9 (E.D. Va. Jan. 4, 2007); *Zackrie v. Lockheed Martin Corp.*, No. RWT 04-1864, 2006 WL 2849767, at *8 (D. Md. Oct. 2, 2006)); *see also Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807 (E.D. Va. 2016) (finding that "reprimands without collateral consequences" do not supply the adversity element of a Title VII retaliation claim because they "cause no detriment . . . besides the bruised feelings which 'all employees experience' on occasion").

is not guaranteed a working environment free of stress. *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985).

> Intolerability is not established by showing merely that a reasonable person, confronted with the same choices as the employee would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign. Instead, intolerability is assessed by the objective standard of whether a reasonable person in the employee's position would have felt *compelled* to resign . . . that is whether he [or she] would have had *no choice* but to resign.

*Perkins v. Int'l Paper Co.*, 936 F.3d 196, 212 (4th Cir. 2019) (emphasis in original) (internal citations and quotations omitted). The conditions complained of must be more severe than even the severe and pervasive harassment necessary to state a claim for a hostile work environment. *Id. See Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (being yelled at, told you are a poor manager, required to work with an injured back and chastised in front of customers is not so intolerable as to compel a reasonable person to resign); *Matvia v. Bald Head Island Mgmt.*, Inc., 259 F.3d 261, 273 (4th Cir. 2001) (co-worker ostracism, denial of a management position and mandatory counseling for turning in an inaccurate time card would not have compelled a reasonable person to resign); *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F. 3d 239, 244 (4th Cir. 1997) (being ignored by co-workers and top management was insufficient to establish constructive discharge); *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994) (dissatisfaction with work assignments, perceived unfair criticism and difficult and unpleasant working conditions are not so intolerable as to compel a reasonable person to resign).

Salley's allegations do not meet this standard for several reasons. First, neither McKinley nor Smith were employed as Superintendent at the time Salley resigned her employment. Indeed, despite her complaints about McKinley and Smith, she "outlasted" them both. McKinley's tenure as Superintendent ended on July 10, 2018, ten months before Salley

resigned. (ECF Doc. 1-1, at ¶ 15.) Smith's tenure as Interim Superintendent ended in March 2019. (*Id.* at ¶ 25.) It was not until two months after Smith departed that Salley accepted a position with another school district. (*Id.* at ¶ 26.) Salley does not allege any facts to support the suggestion that she was subject to a constructive discharge after Smith's employment ended. Moreover, not only does the timing not support a claim for constructive discharge, the facts alleged in the Complaint do not demonstrate that the conditions of Salley's employment were so intolerable that a reasonable person would be compelled to resign. *See infra* Part III.B.3. Therefore, Salley has not alleged an adverse employment action and Count I should be dismissed with prejudice.

**2. <u>Salley has not identified a similarly-situated comparator.</u>**

Not only was Salley not subject to an adverse employment action, she has not alleged facts to support her assertion that she was treated differently than similarly-situated employees. When a plaintiff claims a violation of § 1981 based upon a comparison to an employee from a non-protected class, "the validity of [the plaintiff's] prima facie case depends upon whether that comparator is indeed similarly situated." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010); *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010) (affirming dismissal of Plaintiff's Title VII race discrimination claim because the Complaint failed to establish a plausible basis that white co-workers were "actually similarly situated or that race was the true basis for [plaintiff's] termination."). Here, Salley makes the conclusory allegation that "similarly-situated white Principals were never subjected to the harassment, unlawful acts and defamation endured by Plaintiff." (ECF Doc. 1-1, at ¶ 31.)

Accordingly, Salley must allege facts to show that she is similar in all relevant respects to the Caucasian employees to whom she compares herself. This includes showing that the

Caucasian employees dealt with the same supervisor, were subject to the same standards, and engaged in the same conduct as Salley without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Id.* at 359; *Turner v. Richmond Pub. Sch.*, No. 3:16-cv-256, 2017 WL 1179162, at *13 (E.D. Va. Mar. 28, 2017) (holding that allegations that white, male employees tested positive for drugs, but were not terminated and were allowed to continue with their jobs, was not sufficient to establish the similarly situated element). "And, of course, the comparator must have been treated more favorably than the Plaintiff with respect to the adverse action complained of." *Wilson v. City of Chesapeake*, 290 F. Supp. 3d 444, 457-58 (E.D. Va. 2018) (quoting *Haywood*, 387 F. App'x 355, 359 (4th Cir. 2010)).

In the Complaint, Salley has not identified similarly-situated comparators. She alleges that she was "the only African American Principal in the Amelia Public School system against whom McKinley, Smith and the School Board took adverse employment action." (ECF Doc. 1-1, at ¶ 31.) She further alleges that "similarly-situated white Principals were never subjected to the harassment, unlawful acts, and defamation endured by [her]." (*Id.*) However, Salley has not identified the purported comparators or alleged the facts sufficient to state a claim for discrimination in violation of § 1981. While Salley need not prove a *prima facie* case of discrimination at this stage, she must do more than "make a general accusation that [s]he was treated differently as a result of [her] race" as compared to someone outside of her protected class. *Robinson v. Loudon County Public Schools*, No. 1:16-cv-1604, 2017 WL 3599639, at *4 (E.D. Va. Aug. 18, 2017) (citing *Coleman*, 626 F.3d at 191). Count I should be dismissed with prejudice.

**3. <u>Salley does not state a claim for harassment in violation of § 1981.</u>**

In Count II, Salley alleges that she was harassed on the basis of her race from 2017 to March 2019, that the alleged harassment "was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive atmosphere," that she "suffered a tangible employment action at the hands of McKinley and Smith", and that the School Board did not enforce its anti-discrimination policies and/or prevent and correct promptly the allegedly harassing behavior. (ECF Doc. 1-1, at ¶¶ 37-40.)[3]

A hostile work environment can only exist "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). To establish a hostile work environment claim, a claimant must show that "there is (1) unwelcome conduct; (2) that is based on the plaintiff's [race]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Guessous v. Fairview Property Investments, LLC*, 828 F.3d 208, 221 (4th Cir. 2016).

Harassment is severe and pervasive only if the workplace is "pervaded with discriminatory conduct aimed to humiliate, ridicule, or intimidate." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 316 (4th Cir. 2008).

---

[3] "An adverse employment action is a discriminatory act which 'adversely affects the terms, conditions, or benefits of the plaintiff's employment.'" *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001)). "[N]ot every aspect of an employee's daily work experience constitutes a 'term[], condition[], or benefit[]' of employment that can give rise to a federal cause of action if changed or withdrawn." *Peary v. Goss*, 365 F. Supp. 2d 713, 722 (E.D. Va. 2005) (citing *Von Gunten*, 243 F.3d at 865). *See also Adams v. Anne Arundel County Public Schools*, 789 F.3d 422, 431 (4th Cir. 2015) ("[D]islike or disagreement with an employer's decisions does not invariably make those decisions ones that adversely affected some aspect of employment").

> [P]laintiffs must clear a high bar in order to satisfy the severe and pervasive test. Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard . . . . Thus, **complaints premised on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor, are not actionable under Title VII**.

*Id.* at 315 (emphasis added, internal citations and quotations omitted). Allegations of "disrespectful treatment, cursing, yelling, and reprimanding" reflect "callous behavior" of a superior and a personality conflict, and are not enough to establish the severe and pervasive element of a hostile work environment claim. *Holleman v. Colonial Heights Sch. Bd.*, 854 F. Supp. 2d 344, 353 (E.D. Va. 2012).

Whether the unwelcome conduct was severe or pervasive and altered the conditions of employment is judged "'by looking at all the circumstances,' which 'may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris*, 510 U.S. at 23). "[I]ncidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Shields v. Federal Express Corp.*, 120 F. App'x 956, 961 (4th Cir. 2005). Whether conduct is sufficiently severe and pervasive requires a plaintiff to show that the harassment was severe and pervasive as to her personally ***and*** objectively abusive to a reasonable person in the plaintiff's position. *Briggs v. Waters*, 484 F. Supp. 2d 466, 485-86 (E.D. Va. 2007) (citing *Ocheltree v. Scollon Productions, Inc.*, 335 F.3d 325, 331 (4th Cir. 2003)).

The Complaint alleges an assortment of interactions Salley had with McKinley from 2015 to 2018, only two of which could purportedly be interpreted as racially motivated. (ECF Doc. 1-1, at ¶ 8.)

| **Date** | **Event** | **ECF Doc. 1-1** |
| --- | --- | --- |
| 2015 | McKinley tells Salley that she and Dr. Eagle are going to have to get along. He then said, "Is it because she's white?", laughed and said "I'm just kidding." | ¶ 8 |
| 2016 | McKinley called Salley's cellphone to discuss the nonrenewal of a teacher and the letter Salley drafted. McKinley then yelled at Salley during a follow up meeting to discuss that letter. | ¶ 8 |
| 2016 | At a Principal meeting for all ACPS principals, McKinley had Salley bring additional information regarding high school attendance. When Salley asked why she was the only one who had to provide the information, McKinley stated that he could ask her for whatever he wanted, to which Salley replied, "Yes, you can." McKinley then told her "If you wanted my job, you should have applied for it," then apologized and said "I am sorry I should not have said that." | ¶ 8 |
| 2016 | During a Principal meeting, McKinley played a video with African American individuals in it that was not aligned with any of the planned activities. McKinley and the middle school Principal laughed hysterically when the main character, a black male, mispronounced names of African American students. | ¶ 8 |
| 2016 | McKinley verbally attacked Salley in the main office because of an issue with his son's transportation. Realizing his mistake after he made Salley cry, McKinley hugged her said "I have to get out of here." | ¶ 8 |

| Date | Event | ECF Doc. 1-1 |
|---|---|---|
| 2017 | McKinley yelled at Salley for removing an employee's access to a software system as he requested. | ¶ 8 |
| 2017 | McKinley falsely stated to the media that Salley had stopped students from praying and refused to retract his accusation or apologize. | ¶ 8 |
| 2018 | McKinley interjected himself in the suspension of a student, questioning Salley's decision, implying that she had not proceeded the right way, and forbidding Salley from handling any other cases for that student. | ¶ 8 |
| May 18, 2018 | Salley submits a letter of interest for the position of Director of Instruction/Human Resources. | ¶ 10 |
| May 22, 2018 | McKinley issued a letter of reprimand regarding an April 25, 2018 incident involving mandatory reporting to child protective services. | ¶ 11 |
| May 23, 2018 | Salley lodged a complaint with the School Board regarding McKinley's letter of reprimand. | ¶ 12 |
| May 25, 2018 | Salley submitted a detailed rebuttal to McKinley's letter of reprimand. | ¶ 13 |
| June 2018 | Salley interviewed for the position of Director of Instruction/Human Resources and McKinley selects Cynthia Reasoner for the position. | ¶ 14 |

In all the allegations, only the 2015 comment regarding Dr. Eagle and the 2016 incident involving the video could possibly be interpreted as racially-motivated conduct.[4] These two isolated incidents, however, are insufficient to establish severe and pervasive conduct based on race that altered the terms and conditions of Salley's employment. Furthermore, the entirety of

[4] The Complaint alleges that Salley was harassed based on race between 2017 and March 2019. (ECF Doc. 1-1, at ¶ 37.) Thus, the only potentially race-based conduct occurred **before** Salley alleges the harassment even began. (*Id.*)

McKinley's alleged conduct as a whole is insufficient to state a claim for harassment. The conduct complained of amounts to nothing more than general workplace disputes, rude and callous conduct, routine differences of opinion, and personality conflicts. *See Holleman*, 854 F. Supp. 2d at 352-53.

With respect to Smith, Salley does not allege any harassing conduct that could be plausibly interpreted as racially motivated.

| **Date** | **Event** | **ECF Doc. 1-1** |
|---|---|---|
| Sept. 10, 2018 | Smith meets with Salley and Reasoner regarding the suspension of the ACHS nurse. | ¶ 18(a) |
| Sept. 11, 2018 | Smith instructed Salley to write a letter of reprimand for the ACHS nurse and remove the recommendation for termination. | ¶ 18(b) |
| Sept. 12, 2018 | Smith emailed Salley regarding her draft letter, contradicting what had been agreed upon in the prior meeting, and degrading her ability to write a proper letter. | ¶ 18(c) |
| Sept. 18, 2018 | During a Principal meeting, Smith raised his voice at Salley when she asked about keeping the air conditioning on longer at the high school since the elementary school had been granted permission. | ¶ 18(g) |
| Sept. 26, 2018 | Smith, Reasoner, and Jan Medley met with Salley regarding the transfer of the SPED Coordinator. | ¶ 18(d) |
| Sept. 28, 2018 | Smith directed Salley to write a letter of reprimand for the ACHS nurse. Reasoner later visited ACHS and told Salley not to write the letter. | ¶ 18(e) |
| Sept. 2018 | Smith authorized the son of the ACHS nurse to attend ACHS without consulting Salley. | ¶ 18(f) |
| Oct. 5, 2018 | Salley emailed the School Board to request a formal meeting to discuss Smith's actions. | ¶ 19 |

| **Date** | **Event** | **ECF Doc. 1-1** |
|---|---|---|
| Feb. 14, 2019 | Salley advised Reasoner that she wanted to file a grievance against Smith because:<br>- He deliberately failed to discuss major accomplishments at ACHS during presentations to the School Board—failed to mention the only historically black college or university and failed to mention Black History Program until reminded;<br>- He falsely accused Salley of falsifying an absence—she used sick leave on the day she interviewed with Prince George County Public Schools. | ¶ 20 |
| Feb. 21, 2019 | Smith replied to Salley's February 15, 2019 email requesting the school division take legal action against a student for recording a meeting. Salley alleges that Smith falsely accused her of lying in this email. | ¶ 22 |
| Mar. 6, 2019 | Salley challenged the School Board's decision to uphold Smith's decision to place the February 21 email in her personnel file. | ¶ 24 |

None of the conduct alleged in the Complaint with respect to Smith amounts to harassment, much less the severe and pervasive harassment necessary to state a claim for a hostile work environment. Instead, the allegations show Salley and her supervisor had differences of opinion regarding personnel decisions and actions to be taken. That does not state a claim for violation of § 1981.

At most, the Complaint contains a formulaic recitation of the elements of a cause of action for harassment. It does not, however, contain facts to show that it was plausible that Salley was harassed based on race or that such harassment was severe and pervasive. *See Twombly*, 550 U.S. at 555. Count II should be dismissed with prejudice.

**4. Salley does not state a claim for retaliation in violation of § 1981.**

In Count III, Salley alleges that she "engaged in a protected activity related to discrimination" when she complained to the School Board about McKinley and Smith's actions, that the School Board retaliated against her for complaining, and that the School Board took an adverse action against her by "forcing her out of the school system." (ECF Doc. 1-1, at ¶¶ 44-46.)

To state a claim for retaliation, Salley must show that she "engaged in a protected activity" and that Defendants "took the adverse action because of the protected activity." *Bryant v. Aiken Regional Medical Centers, Inc.*, 333 F.3d 536, 543 (4th Cir. 2013). That is, the complaints must be the "but for" cause of the adverse employment action. *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

"Protected activities fall into two distinct categories: participation or opposition. An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace. *Laughlin v. Metropolitan Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (citing 42 U.S.C. § 2000e-3(a)). Protected activity does not include opposition to "all unlawful practices" or "practices the employee simply thinks are somehow unfair"; the employee must have "actually opposed employment practices made unlawful by Title VII." *McNair v. Computer Data Sys., Inc.*, No. 98-1110, 1999 WL 30959, at *5 (4th Cir. Jan. 26, 1999).

"Merely complaining in general terms of discrimination or harassment without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Young v. HP Enterprise Servs., LLC*, No. 1:10-cv-1096, 2011 WL 3901881, at *5

(E.D. Va. Sept. 6, 2011). *See also Richardson v. Richland Cnty. Sch. Dist. No. One*, 52 F. App'x 615, 617 (4th Cir. 2002) (holding that a plaintiff could not show that she engaged in protected activity because she did not present evidence that she informed her employer that her complaints were based on race or age discrimination); *Ghebreab v. Inova Health System*, No. 1:16-cv-1088, 2017 WL 1520427, at *8 (E.D. Va. Apr. 26, 2017) (holding that complaints of "discrimination" and "unfair treatment" were not protected activity because they did not reference race or national origin); *Land v. Southern States Coop.*, 740 F. App'x 845, 850 (6th Cir. 2018) (a letter that alleged unspecified "discrimination" and hostile work environment without tying the allegations to a protected class or activity was not protected activity).

Salley alleges that on May 23, 2018, she "lodged a complaint with the School Board about McKinley's letter of reprimand." (ECF Doc. 1-1, at ¶ 12.) She does not allege the contents of that complaint. She then alleged she submitted a formal rebuttal to the letter of reprimand on May 25, 2018. (ECF Doc. 1-1, at ¶ 13.) Salley also alleges that on October 5, 2018, she emailed the School Board to request a formal meeting regarding Smith, stating that Smith had

> [D]emeaned, repeatedly retracted statements, and given inaccurate information concerning me and operational matters at the high school. . . . I am concerned that his hostility and temper might influence the outcome of any meeting that is conducted without the presence of a witness. This is a hostile environment, and I feel as though he has made me a target. I feel constantly harassed by him as he uses the most minimal issue to question my role as the high school principal.

(*Id.* at ¶ 19.) On March 6, 2019, Salley again contacted the School Board, challenging its decision to include an email of reprimand in her personnel file. (*Id.* at ¶ 24.) These alleged communications do not assert that Salley was a victim of racial discrimination or harassment.

Merely using the buzz words "harass" and "hostile environment" is insufficient to constitute protected activity. The Complaint does not contain factual allegations that Salley engaged in a protected activity. Therefore, Count III should be dismissed with prejudice.

Yet, even if Salley did engage in a protected activity, § 1981 does not protect an individual from all retaliation, only that retaliation that produces injury or harm. *Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67 (2006). An "adverse action" is an action that negatively effects "the terms, conditions, or benefits" of employment. *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997). Section 1981 does not immunize an employee from "petty slights or minor annoyances that often take place at work and that all employees experience." *White*, 548 U.S. at 67. Instead, it prohibits "actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)). "[P]etty slights, minor annoyances, and simple lack of good manners will not create such a deterrence." *Id.*

As explained *supra*, McKinley issued a letter of reprimand to Salley on May 22, 2018. (ECF Doc. 1-1, at ¶ 11.) Salley alleges that this was in response to her May 18, 2018 letter of interest for the position of Director of Instruction/Human Resources. (*Id.* at ¶ 13.) Yet, this letter of reprimand **predates** Salley's purported protected activity – her May 23, 2018 complaint and May 25, 2018 rebuttal. As such, this letter cannot form the basis of a claim for retaliation. The only conduct in which McKinley is alleged to have engaged **after** the purported protected activity is that he did not hire Salley for position of Director of Instruction/Human Resources. Salley has not, however, alleged that she did not receive the position in retaliation for her alleged protected activity. Moreover, Salley voluntarily resigned her employment with the School Board

nearly a year after McKinley's employment as Superintendent ended. (*Id.* at ¶¶ 15, 26.) As such, Salley has not stated a claim against McKinley for retaliation.

With respect to Smith, Sally purportedly engaged in protected activity on October 5, 2018. (*Id.* at ¶ 19.) The only action that Smith is alleged to have engaged in after that date is the February 21, 2019 email in which Salley alleges that he falsely accused her of lying. That letter was placed in her personnel file. However, this action does not constitute an adverse employment action for the purposes of retaliation under § 1981. *See Thompson*, 312 F.3d at 651. Salley then alleges that she engaged in protected activity on March 6, 2019, but does not allege that Smith engaged in any retaliatory conduct after this date.

Thereafter, Smith was replaced in March 2019, and it was not until May 2019 that Salley accepted a position with another school division. Thus, there are no facts to state a claim for retaliation against Smith even if Salley has adequately alleged that she engaged in protected activity.

Finally, Salley has not alleged that the School Board took any actions against her that could state a claim for retaliation. Indeed, she assumed the interim Superintendent position between the tenure of McKinley and Smith. And, as explained *supra*, Salley was neither terminated nor constructively discharged. Salley has not and cannot state a claim for retaliation. Count III should be dismissed with prejudice.

**5. The School Board cannot be held liable pursuant to § 1983.**

Not only has Salley not alleged facts to establish an underlying violation of section 1981, Salley also has not alleged facts to state a claim for a § 1983 violation against the School Board. That is, Salley has not alleged a policy or custom that allegedly deprived her of her rights under § 1981.

A municipality cannot be held liable under § 1983 based on vicarious liability or a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). To state a cause of action against a local government entity, a § 1983 plaintiff must plead (1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right. *See Jordan v. Jackson*, 15 F.3d 333, 338-40 (4th Cir. 1994). There are four ways in which a municipality may be held liable for a policy or custom: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so "persistent and widespread" as to constitute a custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal quotation marks omitted) (*citing Carter*, 164 F.3d at 218).

When a plaintiff provides only summary legal conclusions and does not specify a policy, custom, or any affirmative decision of policymaking individuals that might serve as a basis for municipal liability, dismissal is appropriate. *Godfrey v. Faulkner*, No. 7:13-cv-00454, 2014 WL 4388407, at *2 (W.D. Va. Sept. 5, 2014); *see also Walker v. Prince George's County, Md.*, 575 F.3d 426, 431 (4th Cir. 2009). Furthermore, "[i]t is well settled that 'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes. Rather, there must be 'numerous and particular instances' of unconstitutional conduct in order to establish a custom or practice." *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003) (citing *Carter v. Morris*, 164 F.3d 215, 220 (4th Cir. 1999); *Kopf v. Wing*, 942 F.2d 265, 269 (4th Cir. 1991)). Proof of the "incident of unconstitutional activity

charged is not sufficient to prove the existence of a municipal custom." *Semple v. City of Moundsville*, 195 F.3d 708, 713-14 (4th Cir. 1999) (citing *Spell v. McDaniel*, 824 F.2d 1387, at 1387-88 (4th Cir. 1987); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985)). Generally, one occurrence of alleged discrimination is not sufficient to constitute a "policy" or "custom". *Williams v. City of Charlottesville*, No. 94-0050-C, 1996 WL 335377, at *7 (W.D. Va. May 23, 1996).

Salley has not alleged that a policy of the School Board led to the alleged deprivation of her rights under § 1981. Nor has she alleged facts that would support an allegation that the School Board had a custom and practice that led to the alleged deprivation. Salley's Complaint is an attempt to hold the School Board liable under a theory of *respondeat superior*, which is insufficient to state a claim under § 1983. Counts I, II, and III should be dismissed with prejudice as to the School Board.

**C. <u>Salley does not state a claim for tortious interference with contract.</u>**

In Count IV, Salley alleges that she "had a valid contract with ACHS and reasonable business expectancies in her employment and property rights," that McKinley and Smith knew she was employed as Principal at ACHS, and that they interfered with her contract by "repeatedly discriminating against [Salley] and publishing false and defamatory statements about [Salley]." (ECF Doc. 1-1, at ¶¶ 52-54.)

In Virginia, there are four necessary elements to establish a *prima facie* case for tortious interference with contract or contract expectancy:

> (1) The existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985).

**1. There was no interference with contract.**[5]

Salley alleges that McKinley and Smith intentionally interfered with her contract by "repeatedly discriminating against [her] and publishing false and defamatory statements about [her]." (ECF Doc. 1-1, at ¶ 54.)

The Complaint does not contain any facts to support an allegation that there was "intentional interference inducing or causing a breach or termination of the relationship or expectancy". *Chaves*, 230 Va. at 120, 335 S.E.2d at 102. As explained *supra*, Salley voluntarily resigned her employment by accepting a position with another school division after both McKinley and Smith were no longer employed by the School Board. (ECF Doc. 1-1, at ¶ 26.) The Complaint does not contain factual allegations to suggest that McKinley or Smith somehow interfered with Salley's employment contract after their employment ended. Moreover, the Complaint does not contain factual allegations that the School Board took some affirmative act to breach or terminate the employment contract with Salley. Simply put, there was no interference with an alleged contract.

[5] Count IV fails to state a claim for the following additional reasons. First, Salley has not alleged facts to support the legal conclusion that she had a valid contract. *See Spectra-4 LLP v. Uniwest Commercial Realty, Inc.*, 290 Va. 36, 43, 772 S.E.2d 290, 293 (2015); ECF Doc. 1-1, at ¶ 52. Second, she has not alleged facts to support the conclusion that Defendants used "improper methods, actions and practices," (ECF Doc. 1-1, at ¶ 54), to purportedly interfere with her contract. *See Duggin v. Adams*, 234 Va. 221, 226-27, 360 S.E.2d 832, 836 (1987); *Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.*, 254 Va. 408, 413, 493 S.E.2d 375, 378 (1997). Improper methods include "those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common law rules," as well as "violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship." *Duggin*, 234 Va. at 227, 360 S.E.2d at 836. Improper methods do not include "actions solely motivated by spite, ill will and malice" toward the plaintiff. *Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 559, 708 S.E.2d 867, 870-71 (2011).

**2. <u>A party cannot interfere with its own contract.</u>**

Furthermore, a party or a party's agent cannot intentionally interfere with its own contract. *See, e.g. Fox v. Deese,* 234 Va. 412, 427, 362 S.E.2d 699, 708 (1987) (citing *Chaves*, 230 Va. at 120, 335 S.E.2d at 102); *Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 448 (E.D. Va. 2002)). As Superintendent and Interim Superintendent with the School Board, McKinley and Smith could not interfere with a contract between Salley and the School Board. Accordingly, Salley has not stated a claim against Defendants for tortious interference with her employment contract. Count IV should be dismissed with prejudice.

**D. <u>Salley does not state a claim for common law conspiracy.</u>**

In Count V, Salley alleges that McKinley and Smith "combined, associated, agreed or acted in concert with others for the express purpose of injuring [Salley] and tortuously interfering with her employment as Principal and the ACHS." (ECF Doc. 1-1, at ¶ 57.) She alleges that they "engaged in a joint scheme the unlawful purpose of which was to defame [Salley] and cause her forced termination." (*Id.*) Salley alleges that this constitutes "a conspiracy at common law." (*Id.* at ¶ 59.)

**1. <u>Salley's claim is barred by the intracorporate immunity doctrine.</u>**

In the context of conspiracy, the Supreme Court of Virginia has established that "a corporation, like an individual, cannot conspire with itself." *Bowman v. State Bank of Keysville*, 229 Va. 534, 541, 331 S.E.2d 797, 801 (1985). The intracorporate immunity doctrine "deems multiple defendants a single entity for the purpose of analyzing a civil conspiracy claim if such defendants are employees or agents of the same entity and are acting within the scope of their employment/agency." *Vollette v. Watson*, 937 F. Supp. 2d 706, 727 (E.D. Va. 2013) (internal citations omitted). No claim for conspiracy can lie against agents or employees of the same

entity acting within the scope of their employment/agency. *See Perk v. Vector Resources Group, Ltd.*, 253 Va. 310, 317, 485 S.E.2d 140, 144 (1997) (finding that the existence of a principal-agent or employer-employee relationship between the several defendants made a conspiracy among those defendants a legal impossibility); *Lewin v. Cooke*, 95 F. Supp. 2d 513, 524 (E.D. Va. 2000) (explaining that "because a corporation and its agents comprise a single legal entity, they are legally incapable of conspiracy").

At all relevant times, McKinley was the Superintendent of ACPS and Smith was the Interim Superintendent. (ECF Doc. 1-1, at ¶¶ 3-4.) McKinley and Smith, as employees of the School Board, are considered a single entity for the purposes of the intracorporate immunity doctrine and could not conspire together to harm Salley.

**2. <u>Salley does not allege facts to support the existence of a conspiracy.</u>**

Furthermore, to assert a common law conspiracy claim, Salley must allege that Defendants (i) had an agreement (ii) to accomplish, by some concerted action, a criminal or unlawful purpose or a lawful purpose by a criminal or unlawful means that (iii) resulted in damages to Salley. *Commercial Business Systems, Inc. v. Bell-South Services, Inc.*, 249 Va. 39, 48, 453 S.E.2d 261, 267 (1995); *William v. AES Corp.*, 28 F. Supp. 3d 553, 574–75 (E.D. Va. 2014). "The gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use an unlawful means." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 28, 431 S.E.2d 277, 281–82 (1993).

Conclusory or general allegations of conspiracy are insufficient to withstand a motion to dismiss. *Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC*, 261 F. Supp. 2d 483, 499–500 (E.D. Va. 2003) (stating to that to survive a motion to dismiss on common law civil

conspiracy, plaintiff must plead agreement in more than mere conclusory language because “a conspiracy claim asserted in mere conclusory language is based on inferences that are not fairly or justly drawn from the facts alleged”); *Johnson v. Kaugars*, 14 Va. Cir. 172, 176 (Richmond Cir. 1988) (“[I]t is not enough merely to state that a conspiracy took place.”).

Stated differently, Virginia law requires a plaintiff to allege “some details of time and place and the alleged effect of the conspiracy” and must allege requisite concert of action and unity of purpose in more than conclusory language. *Johnson*, 14 Va. Cir. at 176; *Kayes v. Keyser,* 72 Va. Cir. 549 (Charlottesville 2007); *Firestone v. Wiley,* 485 F. Supp. 2d 694, 703-04 (E.D. Va. 2007); *see also Connor v. Real Title Corp.*, 165 F.2d 291, 294 (4th Cir. 1947) (concluding that conclusory allegations of “vicious conspiracy and collaboration” between three named defendants were insufficient). Failure to allege a meeting of the minds and an agreement sufficient to support a conspiracy claim is fatal. *See Cox v. MAG Mut. Ins. Co.*, No. 3:14-CV-377-JAG, 2015 WL 1640513, at *6, n.20 (E.D. Va. Apr. 9, 2015) (citing *U.S. ex rel. Godfrey v. Kellogg, Brown & Root, Inc.*, No. 1:05CV1418 GBL, 2008 WL 9878351, at *7 (E.D. Va. Mar. 13, 2008), *aff'd sub nom. U.S. ex rel. Godfrey v. KBR, Inc.*, 360 F. App’x 407 (4th Cir. 2010)).

Here, Salley’s Complaint does not allege facts to support the conclusory assertion that McKinley and Smith “combined, associated, agreed or acted in concert” or that they “engaged in a joint scheme”. (*See* ECF Doc. 1-1, at ¶ 57.) Indeed, the Complaint does not allege that McKinley or Smith ever spoke to one another, much less that they engaged in a conspiracy. Because the Complaint is devoid of factual allegations of an actual conspiracy, Count V should be dismissed with prejudice.

### 3. <u>Salley does not allege facts to support the existence of an underlying tort.</u>

Additionally, a common law claim of civil conspiracy requires proof that an underlying tort was committed. *Almy v. Grisham*, 273 Va. 68, 80, 639 S.E.2d 182, 188 (2007); *Williams v. AES Corp.*, 28 F. Supp. 3d 553, 574 (E.D. Va. 2014) ("Where a plaintiff has no actionable claim for the underlying alleged wrong, an action for conspiracy based on that wrong will not lie."); *Beasley v. FV-I, Inc.*, No. 1:13-CV-116 JCC/TRJ, 2013 WL 1192018, at *5 (E.D. Va. Mar. 21, 2013) (granting a Rule 12(b)(6) motion to dismiss a civil conspiracy claim based on fraud where there was no actionable claim for the underlying alleged fraud"); *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 215, 754 S.E.2d 215, 317 (2014) (citing *McCarthy v. Kleindienst*, 741 F.2d 1406, 1413 n.7 (D.C. Cir. 1984)) ("[C]onspiracy allegations . . . do not set forth an independent cause of action; instead, such allegations are sustainable only after an underlying tort claim has been established"); *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983) ("Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather it is a means for establishing vicarious liability for the underlying tort"). "[W]ithout *proof* of the underlying tort, there can be no conspiracy to commit that tort." *Commercial Business Systems v. Halifax Corp.*, 253 Va. 292, 300, 484 S.E.2d 892, 896 (1997) (emphasis added).

Salley purports to allege a conspiracy to defame her and to force her termination. (ECF Doc. 1-1, at ¶ 57.) First, Salley was not terminated—she resigned. (*Id.* at ¶ 26.) Second, the facts in the Complaint do not support an allegation that Salley was defamed. Finally, as explained *supra*, there is no cause of action for a tortious interference with contract. Because the Complaint does not contain facts that would support the existence of an underlying tort, there can be no cause of action for conspiracy.

**4. A conspiracy to defame is barred by the statute of limitations.**

"[I]n Virginia, '[t]he limitations period for a civil conspiracy is based on the statute of limitations for the underlying act.'" *Lokhova v. Halper*, No. 1:19-cv-632, 2020 WL 963032, at *17 (E.D. Va. Feb. 27, 2020) (quoting *Hurst v. State Farm Mut. Auto. Ins. Co.*, No. 7:05-cv-776, 2007 WL 951692, at *5 (W.D. Va. Mar. 23, 2007), *aff'd*, 324 F. App'x 250 (4th Cir. 2009) (*per curiam*)). The statute of limitations for defamation in Virginia is one year. Va. Code § 8.01-247.1. To the extent that Salley purports to allege a common law conspiracy to defame, such a cause of action is barred by the statute of limitations, which would have expired no later than one year after Smith's employment as Interim Superintendent ended.[6] Count V should be dismissed with prejudice.

**E. The School Board is entitled to sovereign immunity for Salley's state law tort claims.**

"[T]he doctrine of sovereign immunity is 'alive and well' in Virginia." *Messina v. Burden*, 228 Va. 301, 307, 321 S.E.2d 657, 660 (1984). All public elementary and secondary schools are creations of the Commonwealth of Virginia. *See Va. Const. art.* VIII; *Va. Code* § 22.1-2 et. seq. It is well settled that a public school board is entitled to sovereign immunity from liability for injuries resulting from negligence unless that immunity has been abrogated by statute. *Kellam v. School Bd. of the City of Norfolk,* 202 Va. 252, 255, 117 S.E.2d 96, 98 (1960) (finding School Board entitled to sovereign immunity for slip and fall during a concert at the school).

---

[6] Smith's employment as Interim Superintendent ended in March 2019. Therefore, the one-year statute of limitations expired in March 2020. The Supreme Court of Virginia's declarations of judicial emergency tolled statutes of limitations from March 16, 2020 to July 19, 2020. Regardless of whether the statute of limitations in this case was subject to the tolling because of the judicial emergency, the statute of limitations expired before suit was filed on November 12, 2020.

Here, the School Board's sovereign immunity has not been abrogated. Thus, even if Salley had alleged a cause of action under state law, the School Board is entitled to sovereign immunity. This is true even where its employees commit an act of gross negligence or an intentional tort. *See, e.g.*, *Niese v. City of Alexandria*, 264 Va. 230, 239, 564 S.E.2d 127, 133 (2002) (sovereign immunity extends to liability for acts of gross negligence and intentional torts on the part of the city's employees).

## IV. CONCLUSION

For all of the foregoing reasons, the School Board of Amelia County, Jack McKinley, and David Smith, by counsel, respectfully request that this Court grant their Motions to Dismiss and dismiss the Complaint with prejudice.

**SCHOOL BOARD OF AMELIA COUNTY, VIRGINIA, JACK MCKINLEY AND DAVID SMITH**

By Counsel

/s/

Jeremy D. Capps (VSB No. 43909)
Melissa Y. York (VSB No. 77493)
Counsel for School Board of Amelia County, Virginia, Jack McKinley and David Smith
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
jcapps@hccw.com
myork@hccw.com

## C E R T I F I C A T E

I hereby certify that on the 19th day of February, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Steven S. Biss, Esq. (VSB No. 32972)
300 West Main Street, Ste. 102
Charlottesville, VA 22903
804-501-8272 - Phone
202-318-4098 - Fax
stevenbiss@earthlink.net

/s/ ______________________________

Jeremy D. Capps (VSB No. 43909)
Melissa Y. York (VSB No. 77493)
Counsel for School Board of Amelia County, Virginia, Jack McKinley and David Smith
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
jcapps@hccw.com
myork@hccw.com