IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| PARCILLA SALLEY ) | |
| Plaintiff, ) | |
| v. ) | Case No. 3:20-cv-00939-MHL |
| SCHOOL BOARD OF AMELIA COUNTY, VIRGINIA, ) | **TRIAL BY JURY IS DEMANDED** |
| JACK MCKINLEY ) | |
| -and- ) | |
| DAVID SMITH ) | |
| Defendants. ) | |

# AMENDED COMPLAINT

Plaintiff, Parcilla Salley ("Plaintiff"), by counsel, pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, files the following Amended Complaint against Defendants, the School Board of Amelia County (the "School Board"), Jack McKinley ("McKinley"), and David Smith ("Smith"), jointly and severally.

In this action, Plaintiff seeks (a) compensatory damages and punitive damages in the sum of **$600,000.00**, (b) prejudgment interest on the principal sum awarded by the Jury at the rate of six percent (6%) per year pursuant to § 8.01-382 of the Virginia Code (1950), as amended (the "Code"), (c) attorney's fees and expert witness fees pursuant to 42 U.S.C. § 1988, and (d) costs incurred – arising out of the defendants' deprivation of

rights and privileges secured to Plaintiff by 42 U.S.C. § 1981, tortious interference with contract, and common law conspiracy.

## I. THE PARTIES

1. Plaintiff is a citizen of Virginia. She is African-American. She was the principal at Amelia County High School ("ACHS").

2. The School Board is a body corporate selected in accordance with §§ 22.1-28 *et seq.* of the Virginia Code that is responsible for supervision of schools in Amelia County, Virginia (the "County").

3. McKinley is a citizen of Virginia. McKinley is Caucasian. He was superintendent of the Amelia County Public Schools ("ACPS").

4. Smith is a citizen of Virginia. Smith is Caucasian. He was interim superintendent of the ACPS after the School Board fired McKinley.

## II. JURISDICTION AND VENUE

5. The District Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 1367 (supplemental jurisdiction).

6. The Defendants are at home in Virginia, and are subject to the Court's general personal jurisdiction.

7. Venue is proper in the Richmond Division of the United States District Court for the Eastern District of Virginia. A substantial part of the events or omissions giving rise to the claims stated in this action occurred in the Eastern District of Virginia.

## III. STATEMENT OF MATERIAL FACTS

8. Plaintiff is a life-long teacher, principal and school administrator. She earned a Bachelor of Science in Accounting from Virginia State University and a

Master's in Education Administration and Supervision from Virginia State University. She expects to complete a Doctorate in Education in the near future. Plaintiff served as a school leader in the ACPS between 2013 and 2018. She led ACHS for six (6) years. Her track record of success was undeniable. Between 2014 and 2018, ACHS was accredited and was the only school in the division with consistently high performance. ACHS was a Blue Star school for Career and Technical Education ("CTE"). The school was exceptionally well-managed, and maintained a culture of high success. Plaintiff had an untarnished reputation until McKinley chose to discriminate against her because of her race. Motivated by racial animus, McKinley repeatedly questioned Plaintiff's character and integrity, and misrepresented Plaintiff's aptitude as a High School Principal and her attitude toward education. Between 2017 and 2018, McKinley engaged in conduct solely designed to cause Plaintiff to resign her position as Principal of the ACHS. After the Amelia School Board fired McKinley in July 2018, the discrimination and racist bullying continued unabated in the ACPS through March 2019, when Plaintiff severed her relationship because of the intolerance and discrimination.

9. McKinley intentionally created an extremely hostile work environment that was racially motivated and plagued by racial overtones. McKinley routinely disparaged Plaintiff and questioned her decision making. The racial misconduct towards Plaintiff escalated over the years. In 2015, shortly after Martha Eagle ("Eagle") took over as ACPS Human Resources (HR) director, McKinley stopped by Plaintiff's office unannounced and said, "You and Dr. Eagle are going to have to get along." The comment was unsolicited, impromptu and unprecedented. It startled Plaintiff. McKinley then proceeded to ask, "Is it because she is white?", which again was uncalled for and

unexpected. McKinley then started laughing, and said, "I'm just kidding". Plaintiff immediately contacted Allen Vernon (Director of Operations) and informed him of what was said and told her assistant principal, Mr. Steve Hudson, as well. In 2016, McKinley called Plaintiff's personal cellphone during the evening to discuss a letter Plaintiff had given to Lisa Landa ("Landa"), the Spanish teacher at ACHS. McKinley told Plaintiff that there is a difficult process when you are recommending non-renewal of a tenured teacher. Plaintiff indicated that the teacher had violated professional ethics, and this was an ongoing problem with this specific teacher. A follow-up meeting was held with McKinley and Eagle in the High School conference office to further discuss Plaintiff's letter. During the meeting, McKinley leaned forward and yelled at Plaintiff. Eagle intervened and asked Plaintiff if this made her feel uncomfortable. Eagle put her hand on the door, and said "you may leave if this makes you feel uncomfortable". On another occasion, at a principal's meeting, McKinley, addressing attendance data from all three public schools, singled Plaintiff out and asked her to bring additional information with regard to the high school attendance. The very next day, Plaintiff provided him with the information he requested. When Plaintiff asked him why she was the only one asked for this information, McKinley stated that he could ask Plaintiff for whatever he wanted, to which Plaintiff replied, "Yes, you can". McKinley then stated condescendingly, "If you wanted my job, you should have applied for it". He immediately apologized, saying "I am sorry I should not have said that". Plaintiff reported the discussion to Mr. Vernon. During another principal's meeting, McKinley played a video with African-American individuals in it. The random video was not aligned to any of the planned school activities or curriculum. McKinley and the then Principal of the Amelia Middle School,

Sarah Tanner-Anderson, laughed hysterically when the main character, who was a black male, started mispronouncing the names of African-American students. The video and McKinley's racist behavior made Plaintiff feel extremely uncomfortable. On another occasion, McKinley attacked Plaintiff verbally in the main office because of an issue with his son's transportation. A substitute secretary witnessed the incident and tried to calm McKinley down. However, he followed Plaintiff into her office, and yelled at her continuously. McKinley realized his mistake after he made Plaintiff cry. McKinley then violated Plaintiff's personal space and hugged her stating, "I have to get out of here." In 2017, when Plaintiff was the Intern Finance Director, McKinley asked Plaintiff in front of the other directors to disable Mrs. Jones' rights from the Results Driven Accountability ("RDA") framework. Plaintiff did what was instructed. Later, McKinley came into Plaintiff's office and said that Mrs. Jones was very upset because her name had been removed from RDA. McKinley started yelling at Plaintiff, questioning her actions. He got extremely agitated and loud toward Plaintiff using an accusatory and disrespectful tone that made Plaintiff feel threatened. Once McKinley calmed himself down, he apologized. Eagle reminded McKinley that he had given Plaintiff a directive to remove Mrs. Jones' rights from the RDA system. Plaintiff felt extremely embarrassment and remained speechless. In November 2017, McKinley issued a false statement to NBC 12 stating that, "[t]he four year principal of the high school [Plaintiff] stopped a group prayer that students began in the hallway between classes." Even after Plaintiff submitted a video that refuted McKinley's defamatory public statement, McKinley refused to retract his false accusations or to apologize. Plaintiff sent a letter via email to the School Board members concerning McKinley's statement made to NBC 12. Plaintiff

informed the School Board that the statement was false and that McKinley had no knowledge of what had occurred. Board member Jim Ferrara (Ferrara) responded and stated that Plaintiff's concern would be a topic of discussion with the Board, McKinley and Eagle. Ferrara suggested that he wanted to meet with Plaintiff one on one to discuss the matter, but never followed up to schedule a meeting. Plaintiff followed up with a phone call to Ferrara. Ferrara told Plaintiff to contact McKinley and ask him about the possibility of doing a "rebuttal" to his statement. That was Ferrara's solution. Not a retraction, a "rebuttal". Plaintiff met with McKinley in his office and asked him to do a rebuttal to the newspaper because Plaintiff was in fear that McKinley's statement would impact her career negatively. McKinley asked Plaintiff if she thought she was "above" being reprimanded. McKinley flatly refused to issue a statement. McKinley made no public statements about any Caucasian administrators. He suffered no consequence for targeting Plaintiff. In 2018, McKinley interjected himself in a matter concerning the suspension of a student whose parents seemed to have a problem with minority groups. McKinley questioned Plaintiff's decision in the presence of Mr. Vernon, and implied that Plaintiff had not proceeded the right way. Later, McKinley visited the Assistant Principal's office to find the video, which demonstrated that Plaintiff had not made any mistakes. Yet, McKinley forbid Plaintiff from handling any other cases for that student in the future. No Caucasians were ever treated the way McKinley treated Plaintiff.

10. Plaintiff fought back hard against McKinley's discrimination and relentless disparate treatment. Each time she defended herself, however, McKinley retaliated against her with further defamatory statements and falsehoods. After Plaintiff shared a letter with the School Board, which detailed her grievances with McKinley,

McKinley began a non-stop campaign of retaliation against Plaintiff. Plaintiff was extremely uncomfortable meeting with McKinley. McKinley made issues very personal, while often overturning Plaintiff's decisions.

11. On May 18, 2018, Plaintiff submitted a letter of interest for the position of Director of Instruction/HR.

12. On May 22, 2018, McKinley gave Plaintiff a letter of reprimand. The letter pertained to a conversation that occurred a month earlier, on April 25, 2018, concerning mandatory reporting to child protective services.

13. On May 23, 2018, Plaintiff lodged a complaint with the School Board about McKinley's letter of reprimand.

14. On May 25, 2018, Plaintiff submitted a detailed rebuttal to McKinley's letter of reprimand. In her letter, Plaintiff pointed out, *inter alia*, the following facts:

> "This letter is a formal rebuttal to the reprimand letter given to me by Dr. Jack McKinley on May 22, 2018. I want to formally express my point of view on record and share my concerns about the hostile working environment that I feel Dr. McKinley has created in Amelia County Public Schools for me as my supervisor.
>
> As such, I feel that the letter given to me was unwarranted, untimely, and a passive aggressive attempt to sabotage my professional reputation and undermine my professionalism.
>
> A letter was given to me on May 22, 2018, in response to a conversation that was held with Dr. McKinley on April 25, 2018. However, between April 25, 2018 and May 22, 2018, no verbal or written correspondence or follow-up was given to me by Dr. McKinley. Nor has this issue come up again during other subsequent meetings with Dr. McKinley.
>
> Furthermore, I feel that the timing of the letter is coincidental to my application for the position of Director of Human Resource and Instruction, which I submitted Friday, May 18, 2018.
>
> Coincidentally, May 22, 2018, Dr. McKinley requested that I meet with him. When I arrived to meet with Dr. McKinley, also there at the meeting was Anu Upadhyaya, Director of Pupil Personnel and Federal Programs. The Director of Human Resources was not present at this meeting.

> During the May 22, 2018, meeting Dr. McKinley stated that he wanted to discuss mandatory reporting to child protective services with me and then he proceeded to read a letter of reprimand to me about a conversation between him and I held on April 25, 2018. In my response to Dr. McKinley during this meeting, I shared that I was concerned with the timeliness of the letter because the previous conversation about the issue of mandatory reporting had been held one month prior. I stated to Dr. McKinley that I thought the timing of the letter was coincidental because I applied for the Director of Human Resource and Instruction position on Friday, May 18, 2018.
>
> As the meeting progressed and I realized the meeting was about a personnel issue related to me, and not about mandatory reporting, I asked Dr. McKinley three times, if I could record the conversation and he stated, "No". I also felt Mr. Upadhyaya's presence in the meeting as he was reading a reprimand letter to me was a violation of my privacy since Mr. Upadhyaya had no direct involvement with the issue on April 25, 2018. I indicated to Mr. Anu and Dr. McKinley that I felt "Violated". I was reprimanded and given a letter in the presence of Mr. Upadhyaya who is not my direct supervisor or the division Human Resource Director."

15. Plaintiff met with Catherine Wilkinson (School Board member) at her house to discuss the letter given to her by McKinley. When Plaintiff arrived, Wilkinson told Plaintiff to just "let it go". Wilkinson also said that people get written up all the time and the letter didn't matter. She gave Plaintiff two scriptures from a book she was reading. The scriptures spoke about forgiveness. Plaintiff told Wilkinson that McKinley was abusive towards her and that she was going to present those facts to the Board and request the Board remove the letter from her personnel file. When the Board voted 3-2 to remove the letter from Plaintiff's file, Wilkinson recused herself and Board member Michael Neller (Neller) voted against the letter being removed. Neller was upset because Plaintiff recommended his friend (Lisa Landa) for nonrenewal. This is how the School Board routinely retaliated and responded to racial discrimination. It was the School Board's policy to condone discriminatory employment practices, apologize for them, but do nothing to correct or ameliorate the work environment.

16. In June 2018, Plaintiff interviewed for the position of Director of Instruction/HR. According to a member on the panel, Plaintiff and an Assistant Superintendent were the top two for the position and were granted second interviews. In spite of Plaintiff's superior resume, experience and service to the ACPS, McKinley added his friend, Cynthia Reasoner, a white female ("Reasoner"), on for a second interview. Plaintiff had served as a Director for another county, and Reasoner had not. Plaintiff's second interview was done only with McKinley. Plaintiff was given a writing prompt that had to be done during the interview. Reasoner, on the other hand, prepared a PowerPoint for her interview. Reasoner was told ahead of time what to expect in the interview. McKinley selected Reasoner for the position. When Plaintiff requested a copy of her personnel file, there was no interview sheet included for the Director of Instruction/HR position that Plaintiff interviewed for on Thursday, June 14, 2018. McKinley had already decided to select Reasoner.

17. Throughout his tenure, McKinley engaged in discriminatory hiring practices that favored Caucasian women and men with less experience. For instance, in 2017, Mr. Juvenal Abrego, a Hispanic male, interviewed for the position of Assistant Principal for the High School. He obtained the highest scores among the candidates. McKinley tried to persuade Plaintiff that Jennifer Ramey (Caucasian female) was a better fit for the position. At that time, Ramey did not have any experience as a school administrator and she had less teaching experience than the other candidates. Mr. Abrego had administrative experience and more years of teaching experience than Ramey and an exceptional academic background, and yet, McKinley did not think he was a good candidate. Jan Medley applied for the position as Principal of the Amelia Middle School.

She lives in the County and had worked in the County all of her educational career. She had served as a successful assistant principal for several years prior to applying for Principal. Medley did not get the job. Tanner-Anderson (Caucasian) got the job over Medley, in spite of Ms. Medley's years of experience as an Assistant Principal. Valarie Harris ("Harris") is an African-American who applied for the Assistant Principal position at the Elementary School. The position was given to Ramey, who did not have any elementary school experience and less years teaching than Harris. The job description called for a person who had experience in elementary education. Ramey had no experience teaching elementary school. All of her experience was on the high school level. Harris had taught at the middle and elementary schools in Amelia County and Chesterfield County. Harris received numerous accolades in the county for her student receiving 100% pass rate on their Standards of Learning Test. In June 2018, Harris applied for the position of Assistant Principal at the High School. She obtained the highest rating among the other candidates. McKinley tried to persuade Plaintiff that Harris was not a good candidate for that position. He insisted that Plaintiff should hire Daniel Trump (a Caucasian male).

18. On July 10, 2018, the Amelia County School Board fired McKinley. [https://www.richmond.com/news/local/central-virginia/amelia-school-board-fires-superintendent-decision-follows-financial-problems/article_6df26916-17b3-59c6-a054-59e37120cf90.html].

19. After McKinley's termination, Plaintiff served in the capacity of Acting Superintendent prior to Smith's arrival. Reasoner became concerned because Plaintiff was selected to be Acting Superintendent. She and Smith work closely together. Smith

working tirelessly to ensure that Reasoner was selected for the position. He consistently made negative statements about Plaintiff to the School Board and provided false information concerning conversations about staff members.

20. According to PACER, a nationally recognized anti-bullying organization [https://www.pacer.org/bullying/], bullying is defined as a negative behavior directed by someone exerting power and control over another person, with a goal to hurt, harm, or humiliate.

21. After the School Board terminated McKinley, the abuse and discrimination against Plaintiff continued unabated by a School Board that knew it was happening. Plaintiff was the target of racial bullying in the workplace by the new division superintendent, Smith. Smith's hostile behavior toward Plaintiff originated from a disagreement over the Dual Enrollment Program at the beginning of the year, and escalated over the year. The following are examples of Smith's treatment of Plaintiff:

a. On Monday, September 10, 2018 at 10:40 a.m., Plaintiff received a call from Reasoner, stating that she and Smith wanted to meet with Plaintiff immediately to discuss a situation concerning the ACHS nurse. The nurse had been placed on administrative leave two weeks prior to the meeting without confirming that all information was consistent with what was reported. The issue for which the nurse was suspended was not directly and officially made known to Plaintiff until the date Plaintiff informed the superintendent of the allegations. After the meeting on the September 10, Plaintiff was instructed to write a letter of reprimand for the school nurse, and to intentionally omit information concerning 50 pills that were missing and the contract hours for the nurse. Smith also told Plaintiff to remove her recommendation for

termination, and instead say that the case was going to be handled by HR and the superintendent. On September 12, 2018, after submitting a draft copy of the letter of reprimand as directed, Plaintiff received a very upsetting email from Smith, contradicting what had been agreed upon in the previous meeting, and degrading Plaintiff's ability to write a proper letter. Smith's email was especially inappropriate and personal given the fact that the draft letter of reprimand for the school nurse was an exact replica of another letter Plaintiff wrote on September 11, 2018 for an African-American teacher/coach. The letters had the same formatting and were of the same nature. Smith did not have any complaints with the letter that was given to the African-American teacher/coach.

b. On September 18, 2018, Smith raised his voice at Plaintiff in front of her colleagues. He was upset because Plaintiff asked about keeping the air conditioner on at the High School. The Elementary School Principal (Caucasian) had been granted permission to keep the units on, but Plaintiff and Medley were not given the same courtesy.

c. On September 26, 2018, Plaintiff was once again called to another unannounced meeting. Smith, Reasoner, Medley and Plaintiff were present in the room. Smith informed the group that he wanted to move Sherry Spurlock, SPED Coordinator for the Amelia Middle School, to the High School and Veronique Bowers-Jackson to the Middle School. Plaintiff expressed concern in the presence of all the participants. Plaintiff indicated that it was not in the best interest of the High School to have a special education coordinator perform two job duties when the High School was currently warned for the SPED group. Additionally, Plaintiff pointed out that this decision would make the ACHS the only school in the division without a full-time SPED coordinator. It

was also apparent that no financial compensation was going to be assigned to the administrative part of the position, which was a concern for Mrs. Spurlock.

d. On Friday, September 28, 2018 at approximately 9:00 a.m., Reasoner called from Smith's office to tell Plaintiff that Smith wanted Plaintiff to write a letter of reprimand for the High School nurse, Mrs. Eagen, because of an unknown individual who appeared in the clinic on Thursday, September 27. Later, Reasoner came over to the High School to meet with Plaintiff and Mrs. Eagen to discuss the presence of the unknown man in the clinic, and the closing of the clinic during school hours. After the meeting, Reasoner told Plaintiff and Assistant Principal Valerie Harris *not* to write the letter because Mrs. Eagen was on her break when the unknown individual visited. Harris expressed her concern that Reasoner wanted to meet one more time with Mrs. Eagen, and that there were gaps and missing information that Reasoner needed in order to conduct the meeting appropriately with the individual. Reasoner agreed, and the meeting was postponed for Monday, October 1st, 2018.

e. Smith authorized Mrs. Eagen's son to attend Amelia County Public School after the same request was denied in 2017 due to his criminal history and record with drugs and threatening to kill a principal (African-American). Plaintiff was neither consulted nor included in the conversation. After the student started attending ACHS, he committed multiple different disciplinary infractions including fights, disruption in the building, excessive use of profanity, invasion of privacy, unauthorized entry into the principal's office and assault of school staff. Smith's abrupt decision put Plaintiff's staff and administrative team in uncomfortable and unsafe positions, as they tried to maintain their standard of excellence.

22. On October 5, 2018, Plaintiff emailed the Amelia School Board to request a formal meeting to discuss Smith's actions. Plaintiff informed the School Board that Smith had "demeaned, repeatedly retracted statements, and given inaccurate information concerning me and operational matters at the high school. As I stated to Mr. Wilkerson and Dr. Reasoner (Human Resource Director) I am uncomfortable meeting with Dr. Smith alone. During our meeting yesterday, his aggression was very apparent to all of us in the room. I am concerned that his hostility and temper might influence the outcome of any meeting that is conducted without the presence of a witness. This is a hostile environment, and I feel as though he has made me a target. I feel constantly harassed by him as he uses the most minimal issue to question my role as the high school principal." Like McKinley, Smith refused to permit Plaintiff to record their conversations, which is a violation of Virginia law. Plaintiff advised the School Board that she wanted "Mrs. Harris to join me in the meeting as she has witnessed some of the incidents."

23. On October 8, 2018, Plaintiff met with School Board to discuss her concerns regarding Smith. Smith and Reasoner were allowed to remain in the room during the meeting, which made Plaintiff feel very uncomfortable.

24. On February 14, 2019, Plaintiff advised Reasoner that she wished to file a formal grievance against Smith. In presentations to the School Board, Smith deliberately omitted to discuss major accomplishments at the ACHS. Smith used information from Plaintiff's Welcome Back Letter to Parents, Students, and Community Members. He intentionally omitted the only historically black college or university ("HBCU") (Spelman College) that was mentioned in Plaintiff's letter. He also named a few schools (Predominantly White Universities) that were not included in Plaintiff's letter. Plaintiff

only mentioned schools where ACPS's students had been accepted for the current academic year. Assistant Principal Harris asked Smith to explain his rationale for omitting Spelman College. Her daughter attended Spelman. Until reminded, Smith also failed to mention the Black History Program. On February 12, 2019, Smith falsely accused Plaintiff of falsifying an absence. Smith knew that Plaintiff was interviewing for another job because of the retaliation, harassment and hostile work environment at ACHS. Smith harassed Plaintiff. He said, "I talked to Prince George and was surprised that you had an interview on the same day you stated that your dad was sick." Plaintiff told Smith that her father was sick, and it was none of his business what Plaintiff did outside of work. Smith proceeded to point out that he was "pleasantly surprised because you put on your time sheet a sick day, and you interviewed with Prince George." Plaintiff reiterated that her dad was sick. He has dementia and could not be found the previous night. Plaintiff was able to see him that morning and attend her 3:00 p.m. interview for the Assistant Superintendent's position in Prince George County. Plaintiff asked Smith how he wanted her to code her absences, half sick and half personal? He stated, "I want you to put down what's right." Plaintiff asked Smith why Prince George would ask him anything about Plaintiff as he was not included as a reference. Smith represented that it was coincidental because he called them about an educational program and they asked him about Plaintiff. Plaintiff told Smith that she would have never asked him for a reference because she felt he did not like her, and, in light of the meeting with the School Board at the beginning of 2019, it would not be fair for Smith to give Plaintiff a reference.

25. On February 21, 2019, after being informed by Reasoner that Plaintiff intended to file a formal grievance, Smith wrote the following email, false accusing Plaintiff of lying:

> From: **David Smith** <smithkd@ameliaschools.com>
> Date: Thu, Feb 21, 2019 at 2:15 PM
> Subject: Re: Your request for division legal action
> To: Parcilla Salley <salleyp@ameliaschools.com>
> Cc: Cynthia Reasoner <reasonerc@ameliaschools.com>
>
> Mrs. Salley,
>
> This e-mail is in response to your e-mail of Friday, February 15, regarding the recording of a group meeting you had with students on or about February 13. You previously called me regarding the same matter, claiming that the student acted illegally and asking if the school system was going to take legal action or whether you were going to have to do it with your private attorney. I sent you an email advising that the act of recording was not illegal and that the school system would not be taking legal action. (If you would reflect on your own statements regarding the law, you would understand why the recording was not illegal.) You then sent me the e-mail on Friday making several false statements. First, you purported to quote from the Student Handbook. However, I could not find the wording you quoted anywhere in the 2018-19 ACHS Student Handbook. Please provide the reference to the source of that quote. Second, you alleged that a parent told you that I made certain statements to her. I talked to that parent and she flatly denied making the statements as you allege. Lastly, your quote " I was taken aback that you had made this request to her..." is a false accusation.
>
> Mrs. Salley, if you are going to express concerns or make accusations, it is incumbent on you to be accurate.
>
> Dr. Smith
>
> c: Personnel File
> Dr. Cynthia Reasoner, Director of Instruction and Human Resources

26. The School Board upheld Smith's decision to place the email in Plaintiff's Personnel File.

27. On March 6, 2019, Plaintiff notified the School Board that Smith's email was a drastic measure that needlessly questioned Plaintiff's professional judgment and personal integrity as an educator and school leader of a successful high school in Virginia. Plaintiff pointed out the glaring errors in Smith's false accusations. Smith's email stated, "First, you purported to quote from the student handbook. However, I could not find the wording you quoted anywhere in the 2018-2019 ACHS student handbook." Plaintiff advised the School Board that ACPS Expectations of Student Citizenship and Standards of Student Conduct, 2018 – 2019, page 33 reads, "ACPS recognizes that

student access to cell phones and other electronic devices is common in 21st Century society; however, it is imperative that students and parents understand that there are appropriate and inappropriate times for the use of such devices. Students using cell phones or other electronic devices to record anything or anyone with authorization on school property or a school events is strictly prohibited." Smith's purported lack of knowledge regarding the content of the code of conduct, which constitutes ACPS School Policy to safeguard the integrity and safety of every single member of the Amelia County Public Schools community, and his abrupt portrayal of Plaintiff as a liar demonstrates is animus towards Plaintiff. Plaintiff also pointed out to the School Board that Smith stated, "You alleged that a parent told you that I made certain statements to her. I talked to the parent, and she flatly denied making the statements you alleged." In the presence of Mr. Vernon, the parent discussed her concerns, and so called "false allegations." In his statement, Smith was vague, and made immediate judgment to call Plaintiff's correspondence false accusations. Plaintiff urged the School Board to reconsider the decision to keep the email in her file. Plaintiff neither made false statements nor accused Smith of anything. "If a superintendent is going to be allowed to target his subordinates because of his own misunderstanding of school related matters, then we will not lead forward, but in stagnation. I would like this rebuttal to be placed in my personal file, and I hope justice is served soon." The School Board ignored Plaintiff.

28. In March 2019, the School Board replaced Smith.

29. In May 2019, Plaintiff decided to accept a position in another school district. Smith's actions ruined her career in Amelia. Plaintiff suffered a cut in pay as a direct result of Smith's discrimination, retaliation and harassment.

**COUNT I – UNLAWFUL EMPLOYMENT PRACTICES**

**(Violations of 42 U.S.C. § 1981)**

30. Plaintiff restates paragraphs 1 through 29 of this Amended Complaint and incorporates them herein by reference.

31. Under 42 U.S.C. § 1981, "All persons … shall have the same right in every State … to make and enforce contracts … as is enjoyed by white citizens". For purposes of § 1981, the term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." The rights protected by § 1981 are protected against impairment under color of State law.

32. As part of her contract with the School Board, Plaintiff was guaranteed the right to be free from discrimination and harassment.

33. Plaintiff is a member of a protected class.

34. Plaintiff was the only African-American Principal in the Amelia Public School system against whom McKinley, Smith and the School Board took adverse employment action. Similarly-situated white Principals were never subjected to the harassment, unlawful acts and defamation endured by Plaintiff.

35. At all times relevant to this action, Plaintiff was qualified for her job as ACHS Principal and her job performance was satisfactory. Indeed, except for the pretextual letters and Smith's email reprimand, Plaintiff exceeded her employer's legitimate performance expectations.

36. The Defendants reprimanded and intentionally interfered with Plaintiff's enjoyment and opportunities of employment because of their discriminatory animus

towards her race. Defendants acted in a willful and wanton manner and in callous disregard for the federally-protected rights of the Plaintiff because she is African-American. McKinley, Smith and the School Board eventually forced Plaintiff to leave the ACPS because of her race in violation of 42 U.S.C. § 1981. Defendants' racial discrimination interfered with a contractual interest.

37. This Count I is based on 42 U.S.C. § 1983. The School Board, McKinley and Smith by their actions, all of which took place under color of state law, subjected (or caused to be subjected) Plaintiff to the deprivation of rights and privileges secured by 42 U.S.C. § 1981 in violation of 42 U.S.C. § 1983.

38. As a direct result of School Board, McKinley and Smith's racial discrimination and violation of 42 U.S.C. § 1983, Plaintiff suffered damage and incurred loss, including, but not limited to, loss of past and future earnings, loss of fringe benefits, privileges and entitlements of employment, loss of professional status and career enhancement and advancement opportunities, loss of retirement savings, humiliation, pain and suffering, emotional distress, injury to personal and professional reputation, punitive damages, attorneys' fees under 42 U.S.C. § 1988, and costs incurred, all in an amount to be determined by the Jury, but not less than $250,000.00.

**COUNT II – UNLAWFUL EMPLOYMENT PRACTICES**

**(Harassment/Hostile Work Environment in Violation of 42 U.S.C. § 1981)**

39. Plaintiff restates paragraphs 1 through 38 of this Amended Complaint and incorporates them herein by reference.

40. The continuous unwelcome harassment of Plaintiff between 2017 and March 2019 was based on her race.

41. The harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive atmosphere. The atmosphere that Plaintiff found herself in was actually perceived as hostile and would reasonably be perceived to be hostile by a reasonable person. The atmosphere at the ACHS was psychologically injurious, given the frequency of the targeted discriminatory conduct, its severity and illegality, and its insulting and humiliating nature.

42. Plaintiff suffered repeated racially motivated and unjustified reprimands and a tangible employment action at the hands of McKinley and Smith.

43. The School Board is liable for the harassment and the hostile work environment created by McKinley and Smith. The School Board knew about it and exercised no care whatsoever to enforce its anti-discrimination policies and/or to prevent and correct promptly McKinley and Smith's harassing behavior.

44. This Count II is based on 42 U.S.C. § 1983. The School Board, McKinley and Smith by their actions, all of which took place under color of state law, subjected (or caused to be subjected) Plaintiff to the deprivation of rights and privileges secured by 42 U.S.C. § 1981 in violation of 42 U.S.C. § 1983.

45. As a direct result of School Board, McKinley and Smith's racial discrimination and violation of 42 U.S.C. § 1983, Plaintiff suffered damage and incurred loss, including, but not limited to, loss of past and future earnings, loss of fringe benefits, privileges and entitlements of employment, loss of professional status and career enhancement and advancement opportunities, loss of retirement savings, humiliation, pain and suffering, emotional distress, injury to personal and professional reputation,

punitive damages, attorneys' fees under 42 U.S.C. § 1988, and costs incurred, all in an amount to be determined by the Jury, but not less than $250,000.00.

**COUNT III – UNLAWFUL EMPLOYMENT PRACTICES**

**(Retaliation in Violation of 42 U.S.C. § 1981)**

46. Plaintiff restates paragraphs 1 through 45 of this Amended Complaint and incorporates them herein by reference.

47. When she complained to the School Board about the discriminatory and unlawful actions of McKinley and Smith, Plaintiff engaged in a protected activity related to discrimination.

48. The School Board, by and through McKinley and Smith, retaliated against Plaintiff for complaining about McKinley and Smith's racism and illegal conduct as superintendents.

49. Because of Plaintiff's complaints, the School Board took an adverse employment action against Plaintiff, by effectively forcing her out of the school system. Plaintiff's forced resignation resulted in an adverse effect on the terms, conditions and benefits of her employment.

50. Plaintiff's complaints to the School Board caused the adverse employment action taken by the School Board, McKinley and Smith. In 2017, 2018 and 2019, Plaintiff believed that she was complaining about conduct that was unlawful. Plaintiff's belief was objectively reasonable. Plaintiff was repeatedly retaliated against and reprimanded within days of registering complaints against McKinley and Smith.

51. The School Board, McKinley and Smith's actions constitute retaliation in violation of 42 U.S.C. § 1981.

52. This Count III is based on 42 U.S.C. § 1983. The School Board, McKinley and Smith by their actions, all of which took place under color of state law, subjected (or caused to be subjected) Plaintiff to the deprivation of rights and privileges secured by 42 U.S.C. § 1981 in violation of 42 U.S.C. § 1983.

53. As a direct result of School Board, McKinley and Smith's racial discrimination and violation of 42 U.S.C. § 1983, Plaintiff suffered damage and incurred loss, including, but not limited to, loss of past and future earnings, loss of fringe benefits, privileges and entitlements of employment, loss of professional status and career enhancement and advancement opportunities, loss of retirement savings, humiliation, pain and suffering, emotional distress, injury to personal and professional reputation, punitive damages, attorneys' fees under 42 U.S.C. § 1988, and costs incurred, all in an amount to be determined by the Jury, but not less than $250,000.00.

**COUNT IV – TORTIOUS INTERFERENCE WITH CONTRACT**

54. Plaintiff restates paragraphs 1 through 53 of this Amended Complaint and incorporates them herein by reference.

55. Plaintiff had a valid contract with ACHS and reasonable business expectancies in her employment and property rights.

56. McKinley and Smith both knew that Plaintiff was employed as Principal of the ACHS.

57. McKinley and Smith intentionally interfered with Plaintiff's contract, property rights and business expectancies by, *inter alia*, repeatedly discriminating against Plaintiff and publishing false and defamatory statements about Plaintiff. Defendants'

improper methods, actions and practices were, *inter alia*, defamatory, unethical, oppressive, over-reaching, fraudulent, hostile, and sharp.

58. As a direct result of McKinley and Smith's tortious interference, Plaintiff suffered damage and incurred loss, including, but not limited to, loss of past and future earnings, loss of fringe benefits, privileges and entitlements of employment, loss of professional status and career enhancement and advancement opportunities, loss of retirement savings, humiliation, pain and suffering, emotional distress, injury to personal and professional reputation, punitive damages, and costs incurred, all in an amount to be determined by the Jury, but not less than $250,000.00.

**COUNT V – COMMON LAW CONSPIRACY**

59. Plaintiff restates paragraphs 1 through 58 of this Amended Complaint and incorporates them herein by reference.

60. Beginning in 2017 and continuing through March 2019, McKinley and Smith, respectively, combined, associated, agreed or acted in concert with others for the express purposes of injuring Plaintiff and tortiously interfering with her employment as Principal and the ACHS. In furtherance of the conspiracy and preconceived plan, McKinley and Smith engaged in a joint scheme the unlawful purpose of which was to defame Plaintiff and cause her forced termination.

61. McKinley and Smith each acted intentionally, purposefully, without lawful justification, and with the express knowledge that they were defaming Plaintiff and injuring her reputation.

62. McKinley and Smith's concerted actions with others, detailed above, constitute a conspiracy at common law.

63. As a direct result of McKinley and Smith's willful misconduct, Plaintiff suffered damage and incurred loss, including, but not limited to, loss or injury to business, injury to reputation, out-of-pocket expenses, court costs, and other damages in the sum of $250,000.00 or such greater amount as is determined by the Jury.

Plaintiff alleges the foregoing based upon personal knowledge, public statements of others, and records in her possession. Plaintiff believes that substantial additional evidentiary support, which is in the exclusive possession of the Defendants and their agents and other third-parties will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

Plaintiff reserves the right to amend this Complaint upon discovery of additional instances of Defendants' wrongdoing.

## CONCLUSION AND REQUEST FOR MONETARY DAMAGES AND RELIEF

WHEREFORE, Plaintiff respectfully request the Court to enter Judgment against the Defendants, jointly and severally, and as follows:

A. Compensatory damages in the sum of $250,000.00, plus prejudgment interest on the principal sum awarded by the Jury at the rate of six percent (6%) per year;

B. Punitive damages in the amount of $350,000.00 per Defendant;

C. Attorney's fees and expert witness fees;

D. Post-Judgment interest at the maximum rate allowed by law;

E. Costs incurred in connection with this action; and

F. Such other relief as is just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY**

DATED: March 11, 2021

PARCILLA G. SALLEY

By: */s/ Steven S. Biss*

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: **stevenbiss@earthlink.net**

*Counsel for the Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2021 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendants and all interested parties receiving notices via CM/ECF.

By: */s/ Steven S. Biss*
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: **stevenbiss@earthlink.net**

*Counsel for the Plaintiff*