IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| PARCILLA SALLEY<br><br>Plaintiff,<br><br>v.<br><br>THE SCHOOL BOARD OF AMELIA COUNTY *et al*<br><br>Defendants. | ) | Case No. 3:20-cv-939-MHL |

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, Parcilla Salley ("Plaintiff"), by counsel, pursuant to Local Civil Rule 7(F), respectfully submits this Memorandum in Opposition to the motion to dismiss Plaintiff's amended complaint filed by defendants, the School Board of Amelia County ("School Board"), Jack McKinley and David Smith. [*ECF No. 9*].

## I. INTRODUCTION

This matter is before the Court on Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On November 8, 2020, Plaintiff filed a three-count complaint against the Defendants in the Circuit Court for Amelia County, Virginia, alleging claims (a) under 42 U.S.C. § 1983 for deprivation of rights and privileges secured to Plaintiff by 42 U.S.C. § 1981, including claims for constructive discharge, harassment/hostile work environment, and retaliation, (b) tortious interference with contract, and (c) common law conspiracy. Defendants removed the case to Federal

Court [*ECF No. 1*], and filed a motion to dismiss. [*ECF No. 5*]. Plaintiff timely filed an amended complaint pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure. [*ECF No. 8*]. Defendants again moved to dismiss. [*ECF No. 9*].

The matter is before the Court on Defendants' motion to dismiss Plaintiff's amended complaint pursuant to Fed. R. Civ P. 12(b)(6). The Court has jurisdiction pursuant to 28 U.S.C. § 1331.[1] For the reasons stated below, Defendants' motion to dismiss should be denied.

## II. BACKGROUND

Plaintiff is African-American. She was the principal at Amelia County High School ("ACHS"). [*ECF No. 8 ("Am. Compl."),* ¶ *1*]. Defendant School Board is a body corporate selected in accordance with §§ 22.1-28 *et seq.* of the Virginia Code that is responsible for supervision of schools in Amelia County, Virginia (the "County"). Defendant McKinley is Caucasian. He was superintendent of the Amelia County Public Schools ("ACPS") until his termination in 2018. Defendant Smith is Caucasian. He was interim superintendent of the ACPS after the School Board fired McKinley and until March 2019. [*Id.,* ¶¶ *2, 3, 4, 18, 28*].

Plaintiff is a life-long teacher, principal and school administrator. She earned a Bachelor of Science in Accounting from Virginia State University and a Master's in Education Administration and Supervision from Virginia State University. She expects to complete a Doctorate in Education in the near future. Plaintiff served as a school leader in the ACPS between 2013 and 2018. She led ACHS for six (6) years. Her track

---

[1] The District Courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiff bring claims pursuant to 42 U.S.C. §§ 1981 and 1983.

record of success was undeniable. Between 2014 and 2018, ACHS was accredited and was the only school in the division with consistently high performance. ACHS was a Blue Star school for Career and Technical Education ("CTE"). The school was exceptionally well-managed, and maintained a culture of high success. Plaintiff had an untarnished reputation until McKinley chose to discriminate against her because of her race. [*Am. Compl., ¶ 8*].

Plaintiff endured years of discrimination at the hands of McKinley and then Smith. Plaintiff asserts that McKinley and Smith were motivated by racial animus and hostility towards African-Americans. She alleges that no Caucasians were ever treated the way McKinley and Smith treated Plaintiff. She recounts numerous instances of disparate treatment towards herself and other African-American teachers and school administrators. [*Id., ¶¶ 9, 17, 21(a-b), (e), 34, 36*]. She alleges that McKinley and Smith's actions created a hostile work environment at the ACHS, that she was retaliated against when she lodged complaints about McKinley and Smith's behavior, and that the misconduct, defamation, public shaming, and retaliatory reprimands eventually forced her to leave the ACPS in May 2019. [*Id., ¶¶ 8-17, 21-29*].

## III. <u>STANDARD OF REVIEW UNDER FED. R. CIV. P. 12(b)(6)</u>

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 908 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief."). Although mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough, *Twombly*, 550 U.S. at 555, a complaint need only to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Coleman v. Md. Ct. of Apps*, 626 F.3d 187, 190 (4th Cir. 2010) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The issue of facial plausibility is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). The Court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 678-679; *Kensington Volunteer Fire Department, Inc. v. Montgomery County, Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff" (quoting *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). A 12(b)(6) motion should only be granted if, "after accepting all well-pleaded allegations ... as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v.*

*City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

In evaluating a civil rights complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "we must be 'especially solicitous' of the wrongs alleged. We must not dismiss the complaint 'unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.'" *Harrison v. U.S. Postal Service*, 840 F.2d 1149, 1152 (4th Cir. 1988) (citation and quotation omitted).

## IV. DISCUSSION

Defendants move to dismiss the amended complaint on six (6) grounds. First, they argue that Plaintiff did not suffer an adverse employment action. [*But see Am. Compl., ¶¶ 34, 35, 49, 50*]. Second, Defendants assert that Plaintiff does not allege sufficient facts to show that the treatment she received was because of her race. [*But see Am. Compl., ¶¶ 9, 10, 17, 21, 34, 36*]. Third, Defendants claim that Plaintiff has not alleged sufficient facts to show severe and pervasive harassment and a hostile work environment. In this regard, Defendants attempt to portray was they did as minor disagreements and disputes. [*But see Am. Compl., ¶ 41*]. Fourth, Defendants state that Plaintiff's complaints to the School Board do not constitute protected activity because she did not complain about "race discrimination". [*But see Am. Compl., ¶¶ 9, 10, 22, 24, 25, 27, 47, 48*]. Finally, Defendants argue that Plaintiff fails to allege a policy, custom or practice that would give rise to liability pursuant to § 1983. [*But see Am Compl., ¶ 32*].

Viewed in the light most favorable to Plaintiff, the amended complaint suffices to state claims upon which relief can be granted.

**A. *COUNTS – I, II AND III***

Title 42 U.S.C. § 1981 provides that "[a]ll persons … shall have the same right in every State … to make and enforce contracts … as is enjoyed by white citizens". For purposes of § 1981, the term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Although § 1981 does not explicitly use the word "race," the Supreme Court of the United States has construed the statute to ban all racial discrimination in the making of public and private contracts. *See Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 609 (1987) (citing *Runyon v. McCrary*, 427 U.S. 160, 168 (1976)). This includes race-based employment discrimination. *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 551-552 (4th Cir. 2006).

The rights protected by § 1981 are protected against impairment under color of State law. Section 1983 provides the exclusive federal remedy for violation of the rights guaranteed in 42 U.S.C. § 1981. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). In this case, Plaintiff states a claim under § 1983 for violations of her rights under § 1981.

**1. *Section 1981 Constructive Discharge Claim***

To establish a *prima facie* case of wrongful discharge in violation of § 1981, Plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for her job and her job performance was satisfactory; (3) in spite of her qualifications and performance, she was discharged; and (4) other employees, who are not members of the protected class, were retained under apparently similar circumstances. *Honor v. Booz-*

*Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004). The fourth element of the claim is flexible "depending on the factual situation and the claim alleged." *Ennis v. Nat'l Assoc. of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 2008).[2]

In this case, Plaintiff was not actually terminated. Rather, she was forced to resign, *i.e.*, she was constructively discharged. [*Am. Compl., ¶¶ 29, 36, 49*]. An employee is entitled to relief absent a formal discharge, "if an employer deliberately makes the working conditions intolerable in an effort to induce the employee to quit." *Honor*, 383 F.3d at 186 (quoting *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 135301354 (4th Cir. 1995) (internal quotation marks and citations omitted)); *see also Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004) ("Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes."). To demonstrate constructive discharge, Plaintiff must allege and prove two elements: (1) the deliberateness of Defendants' actions, motivated by racial bias, and (2) the objective intolerability of the working conditions. *Honor*, 383 F,3d at 187 (numerous citations omitted). "To act deliberately, of course, requires intent. But direct evidence of intent is unnecessary. Circumstantial proof suffices." *Holsey v. Armour & Co.*, 743 F.2d 199, 209 (4th Cir. 1984) (citing *United States Postal Service v. Aikens*, 103 S.Ct. 1478, 1481 fn. 3 (1983)).

Plaintiff states sufficient facts to show that her working conditions at the ACHS between 2017 and 2019 were objectively intolerable, and that the Defendants' statements

---

[2] Plaintiff was the only African-American Principal in the Amelia Public School system against whom McKinley, Smith and the School Board took adverse employment action. Similarly-situated white Principals were never subjected to the harassment, unlawful acts and defamation endured by Plaintiff. [*Am. Compl., ¶ 34*].

and actions were part of a calculated effort to pressure Plaintiff into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by any of her co-workers. [*Am. Compl., ¶¶ 8-17, 21-29*]; *compare Amirmokri v. Baltimore Gas and Elec. Co.*, 60 F.3d 1126, 1132 (4th Cir. 1995) (there was an issue of fact as to the intolerability of the work conditions, where plaintiff's supervisor and others subjected plaintiff to daily epithets about his Iranian origin and tried to embarrass him in public, resulting in an ulcer and his eventual resignation); *Brown v. Eckerd Drugs, Inc.*, 663 F.2d 1268, 1274 (4th Cir. 1981) ("The district court found, with substantial support, that the employer made her working conditions intolerable, that it did so in order to force her to quit, and that its motivation was, at least in part, racial.").

**2. *Section 1981 Hostile Work Environment Claim***

To establish a hostile work environment claim under § 1981, Plaintiff must show that (1) she experienced unwelcome harassment, (2) based on her race,[3] (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) there is some basis for imposing liability on the employer. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001). A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citation and quotation marks

[3] Although a defendant makes no mention of race, this on its own does not bar a reasonable fact-finder from concluding that the defendant was, in fact, motivated by racial animus. *See Martin v. Merck & Co., Inc.*, 446 F.Supp.2d 615, 629 (W.D. Va. 2006) (examining the context in which two incidents of harassment that made no mention of race occurred and finding that a reasonable fact-finder could conclude these incidents were based on race).

omitted). To determine if conduct qualifies as severe or pervasive, Courts consider the totality of the circumstances, including (1) frequency; (2) severity; (3) whether the conduct was physically threatening or humiliating, or merely an offensive utterance; and (4) whether the conduct unreasonably interfered with the plaintiff's work performance. *Clark Cty. Sch. Dist. v. Breeden*, 552 U.S. 268, 270-271 (2001). Harassment is severe or pervasive if the workplace is "pervaded with discriminatory conduct aimed to humiliate, ridicule, or intimidate." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 316 (4th Cir. 2008) (internal quotation marks omitted). Rude treatment, callous behavior, and a routine difference of opinion and personality conflict do not suffice to state a hostile work environment claim. *Id.* at 315-316.

"Where an employee suffers a tangible employment action at the hands of his supervisor (or successively higher authority) as the result of prohibited discrimination, then the employer may be held liable on the premise that the supervisor acted within the scope of his agency." *Spriggs*, 242 F.3d at 186 (citation omitted). Tangible employment actions, the Supreme Court has said, "fall within the special province of the supervisor … [They] are the means by which the supervisor brings the official power of the enterprise to bear on subordinates." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998). Hence, "a tangible employment action taken by the supervisor" is for § 1981 purpose the act of the employer.

Plaintiff's allegations reach the requisite level of severe or pervasive harassment that creates a hostile work environment. She alleges that discriminatory statements and action permeated the workplace constantly for a period of three (3) years. She suffered tangible adverse employment action when she was publicly defamed by McKinley and

Smith and the pretextual letters and reprimands were put in her file. The School Board knew about the discriminatory conduct, and took no care to prevent and correct McKinley and/or Smith's abuse. *See Hairston v. Royal Building Products, Inc.*, 2019 WL 1591976, at * 8 (W.D. Va. 2019) ("I conclude that Hairston has offered sufficient evidence of a racially hostile work environment to allow a jury to decide whether any such environment was severe or pervasive or imputable to RBP. Hairston was employed by RBP for only two years, and he has testified that in that relatively brief period of time, he was repeatedly told about race-based animus and the use of racial epithets by supervisors; received an anonymous racially antagonistic and potentially threatening phone call; was subjected to race-based jokes; was excluded from meetings; and was otherwise treated less favorably than white employees with respect to privileges such as use of company cars. If a jury credits this testimony, it could reasonably find that all of these events and circumstances combined to create a hostile work environment in violation of Title VII and § 1981."); *Shazier v. Southwest Virginia Regional Jail Authority*, 2009 WL 416005, at * 6 (W.D. Va. 2009) ("Pilkenton refused to take disciplinary action against Coleman, thereby acquiescing in, and condoning, such derogatory and humiliating conduct and verbal abuse").

**3. *Section 1981 Retaliation Claim***

In order to state a *prima facie* case of retaliation under 42 U.S.C. § 1981, Plaintiff must plead facts to show that (1) she engaged in protected activity; (2) the Defendants took adverse action against her; and (3) a causal relationship[4] existed between the

[4] Ordinarily – and this case is no different – questions of causation and the assessment of damages are for the Jury. *Dorman v. State Industries, Inc.*, 292 Va. 111, 122, 787 S.E.2d 132 (2016) (the issue of proximate causation ordinarily is a question of fact for the jury's determination).

protected activity and the adverse action. *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016). "The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm," and applies to conduct that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 67-68.

Plaintiff sufficiently states a claim of retaliation. She alleges that the Defendants retaliated against her each time she complained about McKinley and Smith's conduct. McKinley and Smith both defamed Plaintiff and reprimanded her publicly and in writing. [*Am. Compl., ¶¶ 9, 10, 12, 21, 24, 48, 49, 50*].

**4. *School Board Policy, Custom and Practice***

Contrary to the School Board's argument, Plaintiff has alleged sufficient facts to plausibly state a claim against the School Board under § 1983.

The School Board's policies and practices are a matter of public record of which the Court can take judicial notice:

http://www.amelia.k12.va.us/UserFiles/Servers/Server_60458/File/Webmaster/HR/Employee%20Handbook%20_updated%20July%202019.pdf.

As part of her annual contract, Plaintiff was guaranteed the right to be free from discrimination and harassment. [*Am. Compl., ¶ 32*]. School Board Policy GB states:

> **EQUAL EMPLOYMENT OPPORTUNITIES/NON-DISCRIMATION (Policy GB)**
>
> The Amelia County School Board is an equal opportunity employer, committed to nondiscrimination in recruitment, selection, hiring, pay, promotion, retention, or other personnel actions affecting employees or candidates for employment. Therefore, discrimination in employment against any person on the basis of race, color, religion, national origin, ancestry, political affiliation, sex, gender, gender identity, age, marital status, genetic information or disability is prohibited. Personnel decisions are based on merit and the ability to perform the essential functions of the job, with or without reasonable accommodation.

School Board Policy GBA prohibits harassment against employees, such as Plaintiff, as follows:

> **PROHIBITION AGAINST HARASSMENT AND RETALIATION (Policy GBA)**
>
> The Amelia County School Board is committed to maintaining an educational environment and workplace that is free from harassment. In accordance with law, the Board prohibits harassment and retaliation against students, employees, or others on the basis of sex, gender, race, color, national origin, disability, religion, ancestry, age, marital status, genetic information or any other characteristic protected by law or based on a belief that such characteristic exists at school or any school sponsored activity. The Amelia County School Board is an equal opportunity employer.
>
> Review Policy GBA for specific details on this policy.

"Policy" is the "'course of action consciously chosen from among various alternatives' respecting basic governmental functions, as opposed to episodic exercises of discretion in the operational details of government." *Spell v. McDaniel,* 824 F.2d 1380, 1387 (4th Cir. 1987), *cert. denied sub nom, City of Fayettville v. Spell,* 484 U.S. 1027 (1988). Also, "policy" "in the narrow sense of discrete, consciously adopted courses of governmental action may be fairly attributed to a municipality either because (1) it is directly 'made by lawmakers ... or (2) it is made by a municipal agency ...." *Id.* (internal citations omitted). The plaintiff must demonstrate an "affirmative link" between the policy or custom and the alleged violation. *See Spell,* 824 F.2d at 1388.

Although the School Board espouses "anti-discrimination" policies on paper, its actual "policy" and practice is to discriminate. [*Am. Compl., ¶ 15 ("It was the School Board's policy to condone discriminatory employment practices, apologize for them, but do nothing to correct or ameliorate the work environment.")*]. Plaintiff is the victim of conscious and persistent unlawful employment practices, attributable to the School Board because the unlawful governmental action was taken by the School Board. The School Board knowingly chose to condone McKinley and Smith's actions, and, thus, adopted an

official policy in violation of written policy and in direct breach of Plaintiff's annual contract.

**B. *COUNT IV – Tortious Interference With Contract***

The necessary elements to establish a prima facie case of tortious interference with contract are: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97 (1985). In *Duggin v. Adams*, 234 Va. 221, 360 S.E.2d 832 (1987), the Virginia Supreme Court held that "when a contract is *terminable at will,* a plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not only an *intentional* interference that caused the termination of the at-will contract, but also that the defendant employed "*improper* methods." *Id.* at 226-227, 360 S.E.2d at 836.

> "Methods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules. Improper methods may include violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship. Methods also may be improper because they violate an established standard of a trade or profession, or involve unethical conduct. Sharp dealing, overreaching, or unfair competition may also constitute improper methods."

*Id.* at 227-228, 360 S.E.2d at 836-837 (a plaintiff alleging intentional interference with contract or other economic relations "need not allege and prove all elements of liability of for [the] independent tort") (citing *Top Service Body Shop v. Allstate Ins. Co.*, 283 Or. 201, 582 P.2d 1365, 1371 fn. 11 (1978)); *Stamathis v. Flying J, Inc.*, 2002 WL 1477586,

at * 7 (W.D. Va. 2002) ("Viewing the facts in the light most favorable to Stamathis, there is evidence from which a jury could conclude that defendants used improper methods – defamation, malicious prosecution, and misrepresentations that might not rise to the level of defamation – to interfere with Stamathis' employment. Also, there is a material factual dispute as to whether defendants' alleged defamatory statements and unfounded litigation ended Stamathis' employment relationship with J-Mar. Therefore, the court will deny defendants' motion for summary judgment with regard to the tortious interference with employment claim.").

Plaintiff has most certainly alleged that Defendants McKinley and Smith had knowledge of her contract and intentionally used improper methods to interfere with her employment. [*Am. Compl., ¶¶ 36, 55-57*].

**1. *Fox v. Deese***

In Virginia that "[a] person cannot intentionally interfere with his own contract" and, therefore, an agent acting within the scope of her agency cannot interfere with the contract of her principal. *Fox v. Deese*, 234 Va. 412, 427, 362 S.E.2d 699 (1987). In *Fox v. Deese*, the trial court sustained the defendants' demurrers to plaintiff's claim of tortious interference with contract. The Virginia Supreme Court reversed. The Supreme Court squarely ruled as follows:

> "In Count III, Fox alleges that Mathias maliciously and intentionally interfered with his contract with the City and with his prospective economic interests. Mathias again asserts that he was acting within the scope of his employment with and on behalf of the City and therefore cannot be liable for interfering with the contract.

> The determination of whether Count III states a cause of action turns on the resolution of the scope of employment question. A person cannot intentionally interfere with his own contract. *See Chaves v. Johnson,* 230 Va. 112, 120, 335 S.E.2d 97 (1985). Thus, if an evidentiary hearing establishes that Mathias was acting within the scope of his employment, then he was an agent of the City. In that case, the City's contract was also his contract, and he could not interfere with it.
>
> If, however, the evidence shows that Mathias was acting outside the scope of his employment, Fox must establish the prima facie elements of tortious interference with a contract as set forth in *Chaves,* 230 Va. at 120-21, 335 S.E.2d at 102-03, to state a cause of action under Count III. Once a prima facie showing is made, the burden of proof shifts to Mathias to show the affirmative defense of justification or privilege."

234 Va. at 427, 362 S.E.2d at 708.

In this case, as in *Fox v. Deese*, Defendants' motion to dismiss should be denied because there are issues of fact regarding whether McKinley and Smith's acts, respectively, were within the scope of employment and/or agency. *See, e.g., VMC Satellite, Inc. v. Stevens & Assocs.*, 2005 WL 3579037, at * 3 (Loudoun County Cir. 2005) (Chamblin, J.) ("'Any intra-corporate/agency immunity defense requires a factual determination as to whether the acts complained of were within the scope of the alleged agency relationship" and cannot be resolved on demurrer.'") (quoting *PJS Associates, L.P. v. Cosby,* 2000 WL 1618100 at * 4)). The issue cannot be resolved at the pleading stage on a motion to dismiss. *Harrington v. Sprint Nextel Corp.*, 2008 WL 2228524, at * 7 (E.D. Va. 2008) ("Because Plaintiffs allege action outside the scope of an ordinary Human Resources Manager's duties, the Court believes further discovery is appropriate on this question and will not dismiss Count VI."); *see id. Kensington Assoc. v. West*, 234 Va. 430, 362 S.E.2d 900 (1987) ("[W]hen the undisputed evidence shows that an employee's deviation from his employer's business is slight and not unusual, or, on the other hand, great and unusual, a court shall determine, as a matter of law, whether the

employee was acting in the scope of his employment. *When, however, the evidence places the case between these two extremes, the issue is for a jury*.") (emphasis added) (numerous citations omitted) (cited and quoted in *Smith v. Hewlett-Packard Company*, 2015 WL 11622962, at * 2 (E.D. Va. 2015) ("Indeed, it is well settled in Virginia that the issue typically presents a question for the jury.") (citing *Williams v. Autozone Stores, Inc.*, 2009 WL 3837281, at * 3 (E.D. Va. 2009) (denying motion to dismiss tortious interference claim where complaint "detail[ed] various types of harassment and retaliation, permit[ting] this Court to draw a reasonable inference that Pugh was acting outside the scope of his employment"); *Warner v. Buck Creek Nursery, Inc.*, 149 F.Supp.2d 246, 266 (W.D. Va. 2001) (denying motion to dismiss tortious interference claim where complaint alleged that defendants had induced plaintiff's termination by making false statements about him, permitting a finding that they had acted outside the scope of employment)).

**C.** ***<u>COUNT V – Common Law Conspiracy</u>***

The elements of a claim of common law conspiracy are 1) an agreement between two or more persons; 2) to participate in an unlawful act; 3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; and 4) that the overt act was done pursuant to and in furtherance of the common scheme. *The Country Vintner, Inc. v. Louis Latour, Inc.*, 272 Va. 402, 412, 634 S.E.2d 745 (2006)); *Commercial Business Systems, Inc. v. Bellsouth Services. Inc.*, 249 Va. 39, 48, 453 S.E.2d 261 (1995) ("The foundation of a civil action of conspiracy is the damage caused by the acts committed in furtherance of the conspiracy. Whether a conspiracy caused the alleged damage ordinarily is a question for a jury.") (citations omitted); *see id. Anderson v. Reeds*

*Jewelers, Inc.*, 2017 WL 1987249, at * 5 (E.D. Va. 2017) ("to survive a motion to dismiss for common law conspiracy, a Plaintiff must simply allege that Defendant was engaged in a conspiracy that included either an unlawful act or an unlawful purpose"); *Harrell v. Colonial Holdings, Inc.*, 923 F.Supp.2d 813, 825 (E.D. Va. 2013) ("The 'unlawful act' element requires that at least one member of the conspiracy commit an 'underlying tort.' … This can include the inducement of a breach of contract or defamation, as alleged in this case.") (citations omitted).

Tortious interference with contract and defamation each constitute "unlawful acts" that may serve as a predicate for a claim of civil conspiracy. *See, e.g., Dunlap v. Cottman Transmission Systems, LLC*, 287 Va. 207, 218, 754 S.E.2d 313 (2014) (tortious interference with contract is an "unlawful act" that may form the basis of a claim of civil conspiracy); *see also Harrell*, 923 F.Supp.2d at 826 ("Even if the heightened standards of Rule 9(b) applied [to a claim of civil conspiracy], the Court would find the allegations here to be sufficient. Construed in Defendants' favor, the Counterclaim alleges that Plaintiffs purchased the Strawberry Hill Races Mark on May 24, 2012, and within one week formed an agreement to tortiously injure Defendants"); *Massey Energy Co. v. United Mine Workers*, 2005 WL 3476771, at * 1 (Fairfax Cir. 2005) ("Plaintiffs allege that Defendants conspired to defame and defamed Plaintiffs with the purpose of injuring them in their trade, business, and profession.").

The amended complaint clearly and unmistakably alleges that McKinley and Smith conspired together and with others to tortiously interfere with Plaintiff's contract and property rights. The amended complaint identifies (a) the purpose of the conspiracy, (b) when it was hatched, (c) who participated in the overt acts, (d) the acts committed in

furtherance of the joint plan, (e) the coordinated nature of the attacks, and (f) the role of each participant in accomplishing the common goal of the defamation campaign. [*Am. Compl.,* ¶¶ *60-61*]; *compare Ransome v. O'Bier*, 2017 WL 1437100, at * 4 (E.D. Va. 2017) ("In addition to alleging facts supporting a claim for defamation, Ransome also alleges that O'Bier, Sterrett, and Berman conspired to defame him, and that they used personal email accounts to coordinate and communicate their defamatory publications. The Court therefore denies the motion to dismiss Ransome's Count II common-law conspiracy claim as it relates to defamation."). Where, as here, a plaintiff alleges a conspiracy among ***individuals*** (in this case, McKinley and Smith, the intra-corporate immunity doctrine does not apply. *See, e.g., Colgate v. Disthene Group, Inc.*, 2013 WL 8019576, at * 5 (Buckingham Cir. 2013) (Roush, J.) ("In this case, Counts III and IV do not allege that the Dixons conspired with the Company to harm the Plaintiffs. Instead, it is alleged that the Dixons conspired with each other to harm the Plaintiffs. Of course, the Plaintiffs now include Disthene, Kyanite, the Cavalier Hotel and Blue Rock. Nothing in the intracorporate immunity doctrine prohibits a conspiracy claim against employees, officers, or agents who combine to harm their corporation. The court concludes that the Plaintiffs' claims under Counts III and IV are not barred by the intracorporate immunity doctrine."); *VMC Satellite, Inc. v. Stevens & Assocs.*, 2005 WL 3579037 at * 3 ("there are sufficient allegations that Stevens and Fairclough acted individually to conspire against VMC."); *Singer v. Dungan*, 1992 WL 884986, at * 3 (Fairfax Cir. 1992) (Anunziata, J.) ("While it is true that a corporation cannot conspire with its agents as they are all part of a single legal entity and cannot constitute two guilty minds … plaintiff's Amended Motion for Judgment … alleges that the defendants Dungan and Flammey, acting as individuals,

conspired with one another. It does not identify the corporation as a party to conspiracy. Thus, the intra-corporate immunity to the plaintiff's conspiracy claim is inapplicable to the present case.”).

**CONCLUSION AND REQUEST FOR RELIEF**

For the reasons stated, Plaintiff respectfully requests the Court to deny the Defendants’ motion to dismiss.

DATED: April 8, 2021

PARCILLA G. SALLEY

By: */s/ Steven S. Biss*

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: stevenbiss@earthlink.net

*Counsel for the Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2021 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendants and all interested parties receiving notices via CM/ECF.

By: */s/ Steven S. Biss*

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: stevenbiss@earthlink.net

*Counsel for the Plaintiff*