IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PARCILLA G. SALLEY,

Plaintiff,

v. Case No. 3:20-cv-00939

SCHOOL BOARD OF AMELIA COUNTY, VIRGINIA, JACK MCKINLEY AND DAVID SMITH,

Defendants.

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## I. INTRODUCTION

Plaintiff's opposition to Defendants' Motion to Dismiss, like the Amended Complaint, is long on conclusory assertions and short on facts. The Amended Complaint does not allege facts sufficient to plausibly support any claim against the Defendants and the Motion to Dismiss should be granted.

On brief, Parcilla Salley ("Salley") admits that she "was not actually terminated" from her employment with the School Board of Amelia County ("School Board"). [ECF Doc. 11, p. 11]. Instead, she asserts she was "forced to resign" even though she resigned ten months *after* former Superintendent Jack McKinley's ("McKinley") employment with the School Board ended and two months *after* former Interim Superintendent David Smith's ("Smith") employment with the School Board ended. Because Salley has not alleged facts to support a constructive discharge theory, her claims in Counts I, III, IV and V cannot proceed.

In Count II, it is clear that Salley has not alleged sufficient facts to support her assertion that the treatment she allegedly suffered was because of her race or that she suffered severe and pervasive harassment that altered the terms and conditions of her employment.

With respect to the state law claims against McKinley and Smith, Salley has not alleged facts to establish the required elements of either tortious interference with contract or common law conspiracy. Salley has not alleged facts to suggest that McKinley or Smith somehow interfered with her employment contract after their employment with the School Board ended. Salley also has not alleged facts to state a common law conspiracy claim nor has she disputed that the statute of limitations bars her conspiracy claim.

Finally, with respect to the claims against the School Board, not only can she not prevail on the underlying theories, Salley has not allege a policy, custom, or practice that would give rise to liability pursuant to 42 U.S.C. § 1983, nor can she overcome the doctrine of sovereign immunity on her state law claims.

## II. <u>ARGUMENT</u>

### A. <u>Standard of Review.</u>

To survive a motion to dismiss, a Complaint must contain enough allegations of fact "to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating "plausibility," the court may not rely on mere "labels and conclusions" or plaintiff's "formulaic recitation" of elements of a particular cause of action. *Id.* at 555. Instead, the factual allegations must be enough to raise "a right to relief above the speculative level." *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Instead, "a claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added). While the court must accept as true all factual allegations in the complaint, the court does not assume the truth of any legal conclusions or unsupported, conclusory statements. *Id.* Nor does it "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Federal Rules do not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

**B. <u>Salley was not constructively discharged.</u>**

As a threshold matter, Salley's claims in Counts I, III, IV and V[1] are dependent on her assertion that she was "constructively discharged." To establish constructive discharge, Salley "must meet a high standard." *Ofoche v. Apogee Medical Group, Virginia, P.C.*, 815 F. App'x 690, 692 (4th Cir. 2020). Indeed, Salley does not dispute the applicable legal standard and acknowledges that she must allege facts to establish that her "working conditions became so intolerable that a reasonable person in [her] position would have felt compelled to resign." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 211–12 (4th Cir. 2019).

Yet, on brief, Salley only states in conclusory fashion that she "states sufficient facts to show that her working conditions at the ACHS between 2017 and 2019 were objectively intolerable and that the Defendants' statements and actions were part of a calculated effort to pressure Plaintiff into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by any of her co-workers." [ECF Doc. 11, p. 11-12]. Other than this conclusory assertion, Salley does not identify the factual allegations in the Amended Complaint

[1] Count I is a wrongful discharge claim under 42 U.S.C. §1981. Count III is a retaliation claim under 42 U.S.C. §1981. Count IV is a tortious interference with contract claim and Count V is a common law conspiracy claim.

that could objectively support a claim that a reasonable person in Salley's position would feel compelled to resign.

As the Fourth Circuit has explained,

> Intolerability is not established by showing merely that a reasonable person, confronted with the same choices as the employee would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign. Instead, intolerability is assessed by the objective standard of whether a reasonable person in the employee's position would have felt *compelled* to resign . . . that is whether he [or she] would have had *no choice* but to resign.

*Perkins*, 936 F.3d at 212 (emphasis in original) (internal citations and quotations omitted). Difficult or unpleasant working conditions and denial of management positions, without more, are not so intolerable as to compel a reasonable person to resign. *Id.*

Here, Salley does not address the fundamental gap in her pleading – that both McKinley and Smith were no longer employed with the School Board when she resigned her employment. At the time Salley decided to resign, McKinley had not been employed by the School Board for ten months and Smith had not been employed for two months. While Salley makes the conclusory allegation that she resigned after Smith "ruined her career in Amelia", Salley does not allege facts to support this conclusion nor make a similar assertion against McKinley.

Further, Salley does not allege one substantive action taken by the School Board, McKinley or Smith that would have derailed her career; nor does she allege that an action was taken – by the School Board, McKinley or Smith – in the two months following Smith's resignation as Superintendent that would have left a reasonable person in her position with no choice but to resign. Instead, according to her Amended Complaint, Salley remained a successful Principal of the high school[2] and has not alleged facts to suggest she could not or

[2] See ECF Doc. 8, ¶ 8.

would not have continued in this role. See, *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 425 (4th Cir. 2014) (holding that plaintiff could not establish a constructive discharge claim where she had no contact with alleged harasser for months, nor had he even been in the building at the same time as her since she had returned from leave, and that there was no evidence that harassment was still creating an objectively hostile work environment at the time she resigned).

While the Defendants set out a detailed chart of Salley's allegations against McKinley and Smith in their brief in support of the motion to dismiss, Salley does not refer to one of those allegations to support her argument that she was constructively discharged. Tellingly, Salley only refers generally to paragraphs in the Amended Complaint leaving the Court and Defendants to speculate as to what "factual" allegation could possibly support her position.

Even so, this Court has held that allegations of prior discriminatory practices, fear of returning to a hostile work environment, violation of internal policies involving a layoff, and a disagreeable working environment do not rise to a level of intolerability such that a reasonable person ... would have had *no choice* but to resign. *Tyler-Perkins v. Virginia Cmty. Coll. Sys.*, No. 3:18CV872, 2020 WL 130137, at *10 (E.D. Va. Jan. 10, 2020) (noting reinstatement without loss of benefits or status "strongly counsels against a finding that a reasonable person would feel compelled to resign.") The same is true for Salley. She remained employed as the Principal of the high school and the two alleged harassers were no longer employed with the School Board at the time she decided to resign.[3] The Fourth Circuit has made clear that proof of constructive discharge requires even "a greater severity or pervasiveness of harassment than the minimum

---

[3] Salley's citation to *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1132 (4th Cir. 1995) is unhelpful to her position. There, the plaintiff testified that his supervisor and others subjected him to epithets about his Iranian origin almost daily. Here, Salley makes no such factual allegations.

required to prove a hostile working environment." *Perkins*, 936 F.3d at 212.[4] Salley's speculative and conclusory allegations cannot meet the legal threshold for constructive discharge. Counts I, III, IV and V should be dismissed for this reason alone.

**C. Salley has not alleged a hostile work environment claim under §1981.**

In opposition to the motion to dismiss, Salley again sets forth the legal standard that she needs to meet to allege a hostile work environment claim under 42 U.S.C. §1981. Salley does not, however, identify factual allegations that could satisfy this standard. Instead, Salley simply asserts on brief that "she alleges that discriminatory statements and action permeated the workplace constantly for a period of three (3) years" and that she "suffered tangible adverse employment action when she was publicly defamed by McKinley and Smith and the pretextual letters and reprimands were put in her file." [ECF Doc 11, p. 9-10.]

Last year, the Supreme Court explained why Salley's 1981 claims must be dismissed. To prevail, Salley "must initially plead" that, but for race, she would not have suffered the loss of a legally protected right. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). Salley has not done so.

The Defendants' brief in support of the motion to dismiss laid out in detail the factual allegations contained in the Amended Complaint that Salley claimed supported her hostile work environment claim. [ECF Doc. 10, pp. 12-17.] This illustration demonstrated that the alleged conduct could not plausibly be construed to meet the "but-for" race standard nor the severe and pervasive standard necessary to create an abusive working environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). Indeed, Salley does not specifically cite to any of these allegations in her brief to argue that the alleged conduct was racially motivated or sufficiently

[4] As set out in Defendants' brief in support of their motion to dismiss, Salley has not alleged facts to support a hostile work environment claim. Accordingly, for that reason, she cannot establish a constructive discharge claim. *Id.*

severe and pervasive to amount to a hostile work environment. Instead, she relies simply on conclusory assertions.

Guidance from the Fourth Circuit establishes that Salley's allegations do not meet the threshold necessary to state a hostile work environment claim. For example, in P*erkins*, the Plaintiff asserted 1) that he was treated differently than white employees, including claims for education benefits, 2) he was passed over for several promotions, 3) white employees were promoted more than African American employees, 4) most of the employees at the bottom of his department's list ranking technicians were African Americans and African American employees were given unfavorable shifts, and 5) he was aware of racially offensive conduct by co-workers. The Fourth Circuit concluded that the plaintiff was not subjected to a hostile work environment, because the allegations "cannot reasonably be described as either frequent, physically threatening or humiliating" and the racially offensive conduct was too remote in time relative to his decision to leave his employment. *Perkins*, 936 F.3d at 211–12; see also *Jones v. Sun Pharm. Indus., Inc.*, No. 3:19CV566, 2020 WL 2501439, at *7 (E.D. Va. May 14, 2020) (Plaintiff's allegations that her supervisor was rude during management meetings and only responded to male managers, failed to respond to her emails while responding to male manager emails, failed to promote women, and terminated her employment for a mistake that male employees also made without being terminated failed to establish a hostile work environment claim.)

Like *Perkins*, Salley's allegations that she was not hired for a position she applied for a year before she resigned, that she was yelled at by McKinley on two occasions and received one letter of reprimand from McKinley, that Smith raised his voice to her, criticized a letter of reprimand that she prepared, accused her a falsifying an absence and did not credit her for major accomplishments at the high school, is not severe or pervasive conduct sufficient to alter the

conditions of Salley's employment and create an abusive working environment. None of her allegations can "reasonably be described as either frequent, physically threatening or humiliating" nor did they unreasonably interfere with her work performance. In fact, Salley alleges that she led the high school for six years and up to the date of her resignation "her track record of success was undeniable" and that "the school was exceptionally well-managed, and maintained a culture of high success." [ECF Doc. 8, ¶ 8.] Further, as with *Perkins*, Salley's allegations of purported race based conduct in 2015 and 2016 is too remote in time relative to her decision to leave her employment to support a hostile work environment claim.

"[P]laintiffs must clear a high bar in order to satisfy the [objective] severe or pervasive test." *Perkins*, 936 F.3d 208. Salley has not done so.[5] Her hostile work environment claim should be dismissed.

**D. <u>Salley does not state a claim for retaliation in violation of § 1981.</u>**

In her opposition brief, Salley does not address Defendants argument that she did not allege she engaged in a "protected activity. [See ECF Doc. 10, pp. 18-19.] Instead, Salley simply states that the "Defendants retaliated against her each time she complained about McKinley and Smith's conduct." This assertion does not address the core deficit in the

[5] In her brief, Salley cites to *Hairston v. Royal Bldg. Prod., Inc.*, No. 1:18CV00003, 2019 WL 1591976, at *2 (W.D. Va. Apr. 12, 2019) as apparent support for her claim. But, *Hairston* actually highlights why Salley's allegations in her Amended Complaint do not state a claim for a hostile work environment. In *Hairston*, the Plaintiff alleged that not long after his employment began, he received harassing phone calls referring to him as the "N" word, he was not allowed to use a company vehicle for work although white employees could, his supervisor falsely accused him of not being at work on Mondays and Fridays when he was scheduled to work at another plant, on several occasions Plaintiff was told that his supervisor did not like black people and he was trying to get the plaintiff terminated because he was black, a white managerial employee referred to the plaintiff as the "N" word and with other disparaging remarks because of his race, after plaintiff complained his supervisor said "just leave and quit and move back home", and that after he was terminated an employee again referred to the plaintiff with a racial slur. Salley's allegations are a far cry from the allegations in *Hairston*.

Amended Complaint – Salley did not allege sufficient facts to show she engaged in a protected activity.

Moreover, this summary argument does not rebut the Defendants' point that Salley did not suffer a material adverse employment action in retaliation for her complaints. [See ECF Doc. 10, pp. 19-21.] As explained in the opening brief, Salley has not stated a claim against McKinley or Smith for retaliation. See also, *Smith v. Virginia Hous. Dev. Auth.*, 437 F. Supp. 3d 486, 514 (E.D. Va. 2020) (corrective write-ups cannot serve as the materially adverse employment action because they would not have "dissuaded a reasonable worker from making or supporting a charge of discrimination.")

Additionally, the assertion that Salley was "effectively forc[ed]" out of the school system is belied by the gap in time between her complaints and resignation. As previously stated, Salley resigned ten months after McKinley's employment ended and two months after Smith's employment ended. Further, even in a light most favorable to Salley, it appears that her last complaint – a request to file a formal grievance – occurred approximately three months before she resigned. Simply put, the time period between the claimed protected activities and her resignation is too long to support a claim of retaliation. See e.g., *Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (gap of three to four months between complaint and separation does not support inference of retaliation); *Smith*, 437 F. Supp. 3d at 514–15.

**E. <u>The School Board cannot be held liable pursuant to § 1983.</u>**

Salley's Amended Complaint is an attempt to hold the School Board liable under a theory of *respondeat superior*, which is insufficient to state a claim under 4s U.S.C. § 1983. In fact, in opposition to the Motion to Dismiss, Salley actually cites to the School Board's

nondiscrimination and equal employment policies along with the policy prohibiting harassment and retaliation. [ECF Doc. 11, pp. 11-12.] Salley's conclusory assertion that the School Board did not follow these policies with respect to her is insufficient to state a cause of action against the School Board. Counts I, II, and III against the School Board should be dismissed on this basis alone.

**F. <u>Salley does not state a claim for tortious interference with contract.</u>**

In opposition to the motion to dismiss, Salley simply asserts that she "most certainly alleged that Defendants McKinley and Smith had knowledge of her contract and intentionally used improper methods to interfere with her employment." [ECF 11, p. 14.] Yet, Salley does not address the leap in logic between this assertion and her allegations that she voluntarily resigned her employment by accepting a position with another school division after both McKinley and Smith were no longer employed by the School Board. The Amended Complaint does not contain factual allegations to suggest that McKinley or Smith somehow interfered with Salley's employment contract after their employment with the School Board ended.

Further, while Salley claims that the motion to dismiss should not be granted because McKinley and Smith may have been acting outside of the scope of their employment, she does not make this allegation in the Amended Complaint. Instead, the allegations in the Amended Complaint make clear that McKinley and Smith were acting as the Superintendent for the School Board at times. Thus, they could not interfere with her employment contract.

**G. <u>Salley does not state a claim for common law conspiracy.</u>**

Salley seeks to overcome the motion to dismiss her civil conspiracy claim by asserting that the intra-corporate immunity doctrine does not apply, because the conspiracy was among individuals - McKinley and Smith. [ECF Doc. 11, p. 18.] Salley, however, does not refute or

address that her claim of conspiracy is barred by the statute of limitations. [See ECF Doc. 10, p. 29].[6]

According to the Amended Complaint, McKinley and Smith "engaged in a joint scheme the unlawful purpose of which was to defame Plaintiff and cause her forced termination." [ECF Doc. 8, ¶ 60.] Salley further alleges that they acted intentionally and with the express knowledge that they were defaming" her. [ECF Doc. 8, ¶ 60.] "[I]n Virginia, '[t]he limitations period for a civil conspiracy is based on the statute of limitations for the underlying act.'" *Lokhova v. Halper*, No. 1:19-cv-632, 2020 WL 963032, at *17 (E.D. Va. Feb. 27, 2020) (holding that plaintiff's common law conspiracy claim based on defamation was barred by the statute of limitations) Because the statute of limitations for defamation in Virginia is one year, Salley's purported common law conspiracy claim based upon the Defendants' purported efforts to defame her is time-barred. See, Va. Code § 8.01-247.1.

Even if the conspiracy claim was not time-barred, Salley's conspiracy allegations are too conclusory to survive a motion to dismiss. See, e.g., *Twombly*, 550 U.S. at 556-57, 127 S.Ct. 1955 (2007) (holding that in the Sherman Act context, "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality"); *Lokhova*, 441 F. Supp. 3d at 266 (conclusory assertions of conspiracy cannot survive a motion to dismiss); *Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC*, 261 F. Supp. 2d 483, 499–500 (E.D. Va. 2003) (stating to that to survive a

[6] With respect to the intra-corporate immunity doctrine, Salley's allegations in the Amended Complaint belie her assertion on brief. In paragraph 62 of the Amended Complaint, Salley alleges that "McKinley and Smith's concerted action with others, detailed above, constitute a conspiracy at common law." The "others" included in the Amended Complaint were all employees of the School Board and/or members of the School Board. Thus, the intra-corporate immunity doctrine bars this claim.

motion to dismiss on common law civil conspiracy, plaintiff must plead agreement in more than mere conclusory language because "a conspiracy claim asserted in mere conclusory language is based on inferences that are not fairly or justly drawn from the facts alleged").

Here, Salley's Amended Complaint does not allege facts to support the conclusory assertion that McKinley and Smith "combined, associated, agreed or acted in concert" or that they "engaged in a joint scheme." [See ECF Doc. 8, at ¶ 60.] Indeed, the Amended Complaint does not allege that McKinley or Smith ever spoke to one another, much less that they engaged in a conspiracy. This claim should be dismissed.

### H. The School Board is entitled to sovereign immunity for Salley's state law tort claims.

Salley does not contest that the School Board is entitled to sovereign immunity from her state law claims.

## III. CONCLUSION

For the reasons stated here and in ECF Doc. 10, the School Board of Amelia County, Jack McKinley, and David Smith, by counsel, respectfully request that this Court grant their Motion to Dismiss and dismiss the Amended Complaint with prejudice.

**SCHOOL BOARD OF AMELIA COUNTY, VIRGINIA, JACK MCKINLEY AND DAVID SMITH**

By Counsel

/s/ ______________________________
Jeremy D. Capps (VSB No. 43909)
Melissa Y. York (VSB No. 77493)
Counsel for School Board of Amelia County, Virginia,
Jack McKinley and David Smith
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
jcapps@hccw.com
myork@hccw.com

**C E R T I F I C A T E**

I hereby certify that on the 14th day of April, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Steven S. Biss, Esq. (VSB No. 32972)
300 West Main Street, Ste. 102
Charlottesville, VA 22903
804-501-8272 - Phone
202-318-4098 - Fax
stevenbiss@earthlink.net

/s/ ______________________________
Jeremy D. Capps (VSB No. 43909)
Melissa Y. York (VSB No. 77493)
Counsel for School Board of Amelia County,
Virginia, Jack McKinley and David Smith
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
jcapps@hccw.com
myork@hccw.com